City of Chicago, Appellant, v. Sam J. Lord, Appellee. City of Chicago, Appellant, v. Charles Chertkoff, Appellee.

Gen. Nos. 46,231, 46,232.

411

Opinion filed November 12, 1954. Rehearing denied November 29, 1954. Released for publication November 29, 1954.

JOHN J. MORTIMER, Corporation Counsel of City of Chicago, for appellant; L. LOUIS KARTON, Head of Ap-

peals and Review Division, and ARTHUR MAGID, Assistant Corporation Counsel, both of Chicago, of counsel.

SHULMAN, SHULMAN, ABRAMS & JOSEPH, of Chicago, for appellee; MILTON K. JOSEPH, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

The City of Chicago, plaintiff, appeals from judgments in favor of the defendant in separate actions wherein the respective defendants, Lord and Chertkoff, were charged with unlawfully exhibiting for gain or profit in a place of amusement open to the general public, pictures containing obscene, lewd, indecent or immoral matter in violation of section 13, chapter 192, Municipal Code of Chicago. Reference is made in plaintiff's brief to a further charge against each defendant in violating section 9 of chapter 192, which prohibits the exhibition of indecent, immoral or lewd pictures or plays. This charge, if filed, is not in the record before us.

The cases were tried jointly. No evidence was offered to sustain the charge in the complaints. The court sustained the separate motions of the defendants to suppress certain evidence—six motion picture films taken by the police from the Wonderland Arcade, a place of amusement open to the general public on south State street in Chicago, owned and operated by the defendant Lord. Thereupon the assistant state's attorney who directed plaintiff's case stated that "Without the pictures we have nothing else," and the judgments were entered.

██ The evidence produced on the motions to suppress shows that Lord has 20 electrically operated motion picture machines, each containing a film exhibited to one person at a time on insertion of a quarter in the machine; defendant Chertkoff is employed as a "change

man," making change for customers and reimbursing them when for any reason a machine fails to work or display the whole film. On February 18, 1953, about 5 o'clock p. m., Captain Phelan and Officers McMorrow and Pavlick of the Chicago Police Department entered the arcade. Lord, who was in the rear, immediately left the premises. Customers were viewing the films in various machines. Some of them ceased to function. Chertkoff reimbursed each customer for the quarter inserted by him in these machines. Officer Pavlick put a quarter in machine #10. He viewed the film a short time and then Captain Phelan and Officer McMorrow each viewed a portion of it. Captain Phelan told Reed, an employee whose duty it was to repair out-of-order machines, to transfer the films in machines #2, 4, 13, 16 and 18, which had ceased to function, to machine #10 and display them to the police. Reed complied with the request. The police then took the six films viewed by them and left the premises. The testimony of Reed that Captain Phelan threatened to kick the machines in, take the films away and arrest him and give him a record if he did not comply with the request of the police, is denied by the police officers. Likewise, the testimony of Chertkoff that the police officers told him they would kick in the machines if he, Chertkoff, did not give them a key or open the machines, is contradicted. Since the motions to suppress were sustained we must assume that in so far as the disputed testimony is material to the decision the trial court accepted the testimony of Reed and Chertkoff and rejected the testimony of the officers. The next day Officer McMorrow swore to complaints charging Lord and Chertkoff with violating the ordinance. Warrants were issued and served. Reed was never arrested and no complaint was filed against him.

The motions to suppress are based on the guaranties of the state constitution that "The right of the people

to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated" (sec. 6, art. II), and that "No person shall be compelled in any criminal case to give evidence against himself" (sec. 10, art. II). Plaintiff contends that the judgments should be reversed because none of the films were obtained by unreasonable search and seizure; that a motion to suppress evidence obtained by such means will not lie in an action for violation of a municipal ordinance; that Chertkoff, having no title to or right of possession of the premises searched or the films seized, cannot move to suppress the evidence; and that "the guaranty against compulsory self-incrimination may be invoked only 'in any criminal case,' and not in proceedings of a civil nature."

██ The right of an officer to arrest without warrant for the violation of a city ordinance committed or attempted in his presence and his right to search when making a lawful arrest or executing a valid search warrant, are not before us. No arrest was made until the day following the seizure of the films. The arrests then made were upon warrants. No search warrant was issued. The officers acted without legal justification and the taking of the film originally in machine #10 and the search for and seizure of the films in the other machines are repugnant to the constitutional guaranty against unreasonable search and seizure.

██ In the absence of an express statutory remedy, a motion to suppress evidence wrongfully obtained by an illegal search is the proper legal remedy. 20 Amer. Jur., Evidence, sec. 396. The Supreme Court has uniformly held that evidence procured by an illegal search is not admissible in a criminal prosecution and will be suppressed on motion made in apt time—before the commencement of the trial. *People v. Brocamp,* 307 Ill. 448 (1923); *People v. Castree,* 311 Ill. 392 (1924), distinguishing *Gindrat v. People,* 138 Ill. 103;

and other cases, to and including *People v. Albea,* 2 Ill.2d 317 (1954). This protection against an unreasonable search is based on the invasion of the privacy of the individual—his home, office and effects—rather than on the self-incriminatory effect of the evidence secured. As said in *People v. Grod,* 385 Ill. 584 (1944): "The *Brocamp* and the *Castree* cases (307 Ill. 448 and 311 Ill. 392) are the only Illinois cases called to our attention in which both sections 6 and 10 of article II of the Illinois constitution were referred to. In all of the other cases the objections were based solely upon section 6 of article II." In *People v. Martin,* 382 Ill. 192, and *People v. Albea, supra,* evidence was suppressed because it had been obtained by an unlawful search. No reference was made to the constitutional guaranty against self-incrimination. In the *Martin* case the court, following *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, stated that the essence of the constitutional guaranty against unreasonable searches "is not merely that the evidence so seized may not be used before the court, but may not be used at all," and held that the testimony of witnesses whose names and addresses had been obtained from books and records unlawfully seized by the police should have been suppressed and excluded. In *People v. Albea* the holding was that the testimony of a person discovered and arrested by the police when unlawfully searching defendant's apartment should have been suppressed and excluded.

This constitutional guaranty is available only if the motion to suppress is made before the commencement of the trial at which such evidence or testimony is to be used. Failure to move in apt time to suppress waives the right. *People v. Sovetsky,* 343 Ill. 583. When it is waived, evidence obtained by an unlawful search is admissible not only in the proceeding in which the constitutional guaranty is waived, but in any and all

416

subsequent proceedings in which it may be material. Therefore, the constitutional protection is meaningless unless a motion to suppress may be made in the first proceeding, civil or criminal, in which evidence unlawfully obtained is to be used.

■ ■ The "unreasonable searches and seizures" prohibited by section 6 of article II are almost always made for the purpose of compelling a man to give evidence against himself (*Boyd v. United States,* 116 U. S. 616, 633), and, as said in *People v. Exum,* 382 Ill. 204, "When the thing forbidden by the constitution, viz., compelling a man to give evidence against himself in a prosecution for crime, is the object of a search and seizure of his private papers, property, or effects, it is 'an unreasonable search and seizure' within the prohibition of the constitution." The constitutional guaranty against self-incrimination (sec. 10, art. II) may also be waived. In *People v. Nachowicz,* 340 Ill. 480, a defendant called as a witness in the trial of an indictment against another person voluntarily testified to facts tending to prove himself guilty of embezzlement. He was subsequently indicted. In his trial the testimony given on the former trial was received against him. In sustaining a conviction based on this evidence the court said (p. 492):

"Section 10 of article 2 of the constitution provides that no person shall be compelled in any criminal case to give evidence against himself. This constitutional privilege of silence is an absolute guaranty to every person appearing as a witness in any court in this State against being required to answer any question the answer to which will expose or tend to expose him to any penalty, fine, forfeiture or punishment, or tend to accuse him of any crime or misdemeanor, or will be evidence which will form a link in a chain of evidence to convict him of a criminal offense. (*Minters v. People,* 139 Ill. 363; *Lamson v. Boyden,* 160 Ill. 613; *People*

*v. Spain,* 307 Ill. 283.) The privilege is, however, personal to the witness, and if he answers without claiming it, the privilege is waived. *Bolen v. People,* 184 Ill. 338; *New York Life Ins. Co. v. People,* 195 Ill. 430."

■ Plaintiff's contention that "the guaranty against compulsory self-incrimination may be invoked only 'in any criminal case' and not in proceedings of a civil nature" is answered in *McCarthy v. Arndstein,* 266 U. S. 34. In that case a bankrupt being examined for the discovery of assets claimed immunity from self-incrimination under the Fifth Amendment to the Constitution of the United States. The Supreme Court said:

"The Government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant. It protects, likewise, the owner of goods which may be forfeited in a penal proceeding."

See Wigmore on Evidence, 3rd ed., vol. 8, sec. 2252, pp. 324–325; sec. 2257, p. 334; 58 Amer. Jur., Witnesses, secs. 36, 43, 44, 45.

■ ■ The act charged in the complaints—exhibiting lewd and obscene moving pictures—is a violation of the criminal law, an offense under the common law (33 Amer. Jur., Lewdness, Indecency and Obscenity, secs. 2 and 4), punishable in Illinois by fine or imprisonment (Ill. Rev. Stats. 1953, chap. 38, par. 600 [Jones Ill. Stats. Ann. 37.561]; *Smith v. People,* 25 Ill. 17), and under the Criminal Code (Ill. Rev. Stats. 1953,

chap. 38, par. 470 [Jones Ill. Stats. Ann. 37.422]), punishable by fine or imprisonment, or both. The violation of a statute and the violation of an ordinance by the same act are separate offenses, separately punishable. *City of Evanston v. Wazau,* 364 Ill. 198.

 A suit by a city to recover a penalty for violation of a city ordinance is a civil suit. *Town of Jacksonville v. Block,* 36 Ill. 507; *City of Chicago v. Knobel,* 232 Ill. 112. The fact that the offense charged is also a criminal offense (assault and battery) does not change the nature of the proceedings. *Hoyer v. Town of Mascoutah,* 59 Ill. 137. The suit, however, has criminal aspects. As in the instant cases, a defendant may be arrested on a warrant and required to give bail for his appearance at the trial. He may be committed for failure to pay a fine assessed on conviction upon a preponderance of the evidence. In *People v. Edge,* 406 Ill. 490, the court held that the provision of the Criminal Code (Ill. Rev. Stats. 1949, chap. 38, par. 657 [Jones Ill. Stats. Ann. 37.632]) authorizing arrest "by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence," authorized arrest without warrant for the violation of a city ordinance committed in the presence of an officer, and said: "While an action for a violation of a municipal ordinance is both tried and reviewed as a civil proceeding, (*City of Chicago v. Terminiello,* 400 Ill. 23; *City of Chicago v. Williams,* 254 Ill. 360), this does not preclude a violation of a municipal ordinance, subjecting the offender to the penalty of a fine, from being a 'criminal offense,' within the contemplation of the statute on arrest." An action for violation of a city ordinance, like other proceedings for penalties and forfeitures because of the violation of a public law, is criminal in nature.

 The guaranties of sections 6 and 10 of article II of the Illinois constitution and the respective

guaranties of the Fourth and Fifth Amendments to the Constitution of the United States against unreasonable searches and seizures and self-incrimination, are, in effect, the same and are construed alike. *People v. Grod,* 385 Ill. 584. *Boyd v. United States,* 116 U. S. 616, is frequently cited and followed by the Illinois courts. It was a civil suit instituted by information for the forfeiture of certain cases of glass alleged to have been wrongfully imported into the United States without payment of the full, lawful duties. The revenue law prescribed a penalty for the fraud charged of fine or imprisonment, or both, and, in addition to the fine, a forfeiture of the property. On the trial it became important to show the quantity and value of the glass contained in 29 cases previously imported. The district attorney procured an order directing the claimants of the glass to produce the invoice covering the prior shipment, or in the alternative, as provided in the statute, that the statements in the petition for the production of the invoice be taken as confessed. The court held that the language of the statute was not within the literal terms of the Fourth or Fifth Amendments to the Constitution of the United States, but that the forced production of the invoice was a violation of both amendments. The court said (p. 634) :

"If an indictment had been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor elects to waive an indictment and to file a civil information against the claimants (that is, civil in form) can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is

420

in substance and effect a criminal one. . .. . As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; . . . ."

In *Lees v. United States,* 150 U. S. 476, a civil action to recover a statutory penalty for importing aliens under contract to perform labor, the court said: "This, though an action civil in form, is unquestionably criminal in its nature, and in such a case a defendant cannot be compelled to be a witness against himself." The fallacy of plaintiff's position is pointed out in *Mumford v. Croft* (Del.), 93 A.2d 506, where the court said:

"Practically every crime results in a civil liability. If, in a civil action, a person suspected of the commission of a crime could be compelled to disclose the very facts which would convict him of that crime, obviously the constitutional privilege would be meaningless."

■■ Plaintiff contends that even though the motion to suppress should be sustained as to Lord, the owner of the arcade and chief beneficiary of the alleged unlawful exhibitions of lewd and obscene moving pictures, thereby permitting him to escape trial, the motion should be denied as to Chertkoff, an employee on a weekly wage, so that he may be tried and punished for a violation of the ordinance based upon acts performed in the course of his employment. This cannot be. Chertkoff did not have any interest as owner in the premises searched or the films taken. He was in charge of the arcade after Lord departed, immediately upon the entrance of the police, and he had the right of possession of the premises and of the films as against

everyone other than Lord, including the police. He must be permitted to assert that right of possession in an action against him based upon evidence procured by the unlawful acts of the police. In *People v. Grod,* 385 Ill. 584, the Supreme Court held that a motion to suppress evidence, consisting of stolen property seized on an unlawful search of defendant's home, should have been sustained, even though the defendant did not claim ownership of the property. In *People v. Martin,* 382 Ill. 192, the defendant Kuder, an employee of Martin, had made certain entries in books and records of Martin unlawfully seized by the police. The court held, on a motion by Kuder to suppress the evidence, there was no merit in a contention "that she was not interested in the papers because she did not own them." See *McDonald v. United States,* 335 U. S. 451. The motion of Chertkoff to suppress the evidence was properly sustained.

The judgments appealed from are affirmed.

*Affirmed.*

BURKE, P. J. and FRIEND, J., concur.