**Duane A. BOOTZ, Plaintiff,**

**v.**

**Richard CHILDS, et al., Defendants.**

**No. 83 C 4626.**

United States District Court,
N.D. Illinois, E.D.

May 22, 1985.

Andrew J. Bootz, Mount Prospect, Ill., for plaintiff.

Richard T. Wimmer, Klein, Thorpe & Jenkins, Chicago, Ill., for City of Des Plaines and unknown police officers.

John F. Early, Early, Collison, Tousey & Regan, Elgin, Ill., for J. Slonina.

## MEMORANDUM OPINION

GRADY, District Judge.

This is a civil rights action under 42 U.S.C. § 1983, for defamation, illegal arrest, conspiracy and unlawful surveillance. Discovery was completed as of April 15, 1984. Defendants have now moved for summary judgment, and for attorneys' fees under 42 U.S.C. § 1988.

## BACKGROUND

Plaintiff Duane A. Bootz is a resident of the City of DesPlaines, Illinois, and was formerly employed as a short-order cook at Denny's Restaurant in DesPlaines. Defendants are DesPlaines police officers Richard C. Childs, K. Randolph, J. Stephens, Richard Rozkuszka, and J. Slonina, DesPlaines police chief Leroy Alfano, and the City of DesPlaines.

Plaintiff alleges that defendants have maliciously conspired and engaged in a course of conduct designed to embarrass, harass and discredit plaintiff, and get him fired from his job at Denny's. Specifically, plaintiff alleges that defendant Childs and other DesPlaines police officers harassed him at his place of employment by complaining about his cooking and refusing to eat food cooked by him. In particular, plaintiff cites an incident during the early morning hours of June 30, 1983, when defendant Childs insisted that someone other than plaintiff cook his food because plaintiff had previously put something in Childs' food. Later that day, at approximately 11:00 p.m., plaintiff was riding his bicycle home from work[1] and saw defendant Childs parked in a squad car, apparently watching plaintiff's home. Plaintiff waved hello, and then proceeded into his house. At midnight, as plaintiff was waiting outside his house for a ride to go on a camping trip, Childs arrested plaintiff for riding his bicycle without a headlight and for failing to stop at a stop sign while on a bicycle. Plaintiff was held at the DesPlaines police station for an hour before he was allowed to speak with his attorney (who is also plaintiff's father) and post bond. After leaving the police station, plaintiff got into a car to go home, and was followed by defendant Rozkuszka to a shopping center parking lot where plaintiff and his family confronted Rozkuszka and asked him for identification. Defendant refused to identify himself, but did tell plaintiff that he had received orders to follow plaintiff.

Plaintiff also alleges that defendant police officers maliciously informed plaintiff's employer, friends and neighbors of plaintiff's prior criminal arrests and convictions in order to embarrass and discredit him. Plaintiff admits that he has a criminal record, although the exact nature of that record is unclear. Plaintiff's Memorandum in Opposition to Defendant's Memorandum in Support of Their Motion for Summary Judgment, Transcript of Dep. of Duane A. Bootz, at 91–93. In addition, plaintiff claims that defendant Slonina cited plaintiff for parking his motor home at his residence in violation of a DesPlaines city ordinance regulating taxis.

Aside from these factual allegations, plaintiff does not clearly state what constitutional violations he believes occurred. Plaintiff appears to claim that defendants' defamatory statements regarding his job performance and prior criminal record damage his reputation and were intended to cause plaintiff to lose his job. Further, plaintiff asserts that his arrest on June 30, 1983, was unlawful because it was done without a warrant, and that defendants maliciously prosecuted plaintiff for the bicycle violations and parking violation. Plaintiff also alleges that no one else has been similarly arrested and prosecuted for bicycle violations, and so plaintiff may be bringing a claim for selective prosecution as well. The "super-strict" surveillance of plaintiff's home and whereabouts on June 30 supposedly infringed on plaintiff's Fourth Amendment rights, and there is

---

1. Plaintiff was riding a bicycle because his driver's license had been suspended following his arrest in October 1982 by defendant Childs for driving under the influence. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Exh. B, Affid. of Duane A. Bootz, ¶ 2. Plaintiff is apparently not challenging any aspect of that arrest in this lawsuit.

**98**

some indication that plaintiff believes that all the defendants conspired to commit these various acts. Finally, defendants City of DesPlaines and Leroy Alfano allegedly ordered or acquiesced in the police officers' actions.

**Defamation Claims**

Defendants have moved for summary judgment on plaintiff's defamation claims, arguing that the police officers' statements concerning plaintiff were not defamatory because they were true, and to the extent that any statements were defamatory, they did not deprive plaintiff of any constitutional rights.

It is axiomatic that in order for a statement to be defamatory, it must be false. *See Zaret v. Joliet Park District*, 91 Ill. App.3d 225, 227, 47 Ill.Dec. 654, 415 N.E.2d 659, 660 (3d Dist.1980). Plaintiff has not specified the content of defendants' statements, other than to allege that Childs and other DesPlaines police officers informed plaintiff's employer, friends and neighbors about his past criminal record, nor has any evidence been presented as to the exact nature of plaintiff's record. We are therefore unable to determine at this time whether all of defendants' statements were truthful and not defamatory.

█ Regardless of this factual question, however, we find that summary judgment for defendants is appropriate on plaintiff's defamation claims since it is clear that plaintiff has not suffered a constitutional injury. Defamatory statements by state officials that damage an individual's reputation alone are clearly not cognizable under 42 U.S.C. § 1983 as a civil rights violation, even though a state tort claim for defamation may exist. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Under the "stigma plus" test, the stigma caused by the defamation must occur in conjunction with, or "plus," the loss of some right or governmental benefit, or a change in plaintiff's legal status, without due process of law. *Id.; Hadley v. County of DuPage*, 715 F.2d 1238, 1246–47 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *see also Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (defamatory action of "posting" that an individual is an alcoholic, thereby depriving the individual of the right to purchase liquor, is unconstitutional).

█ Plaintiff's claims that defendants' statements concerning his criminal record embarrassed and discredited him therefore clearly do not state a cause of action under § 1983. Plaintiff also alleges that defendants' statements to his employer were made with the intent of causing plaintiff to lose his job. Plaintiff's employment as a short-order cook at a privately-owned restaurant, however, is not a governmental right or benefit, nor has plaintiff alleged that the defamation caused a change in plaintiff's legal status.[2] Moreover, defendants have submitted the deposition testimony of plaintiff's supervisor at Denny's Restaurant, who stated that plaintiff was not fired but instead voluntarily left Denny's to take a higher paying job at a factory. Defendants' Memorandum in Support of Their

---

**2.** Defendants imply that under no circumstances may an employee who loses a privately-held job sue a state official for constitutional defamation. Defendants' Memorandum in Support of Their Motion for Summary Judgment, at 4. While constitutional defamation actions are generally brought by public employees, *see Hadley*, 715 F.2d at 1244–45, the Constitution does protect against unreasonable governmental interference with the "liberty right" to hold specific private employment and follow a chosen line of work. *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 970 (D.C.Cir.1979). *See also Lawson v. Sheriff of Tippecanoe County, Inc.*, 725 F.2d 1136, 1138 (7th Cir.1984) ("This liberty right must not be confused with the right to a job ... but if a state excludes a person from a trade or calling, it is depriving him of liberty, which it may not do without due process of law."). If the defamatory actions of state officials caused a person to be excluded from a chosen private profession or trade, as in a state licensing procedure or governmental approval system, then a claim for constitutional defamation may arise. *Cf. Margoles v. Tormey*, 643 F.2d 1292, 1297–99 (7th Cir.1981), *cert. denied*, 452 U.S. 939, 101 S.Ct. 3082, 69 L.Ed.2d 954 (1981).

Motion for Summary Judgment, Transcript of Dep. of Meta Wade, at 24–27. Plaintiff has not refuted Wade's testimony, and in fact, his amended complaint does not actually allege that defendants' defamatory actions led to his loss of employment but simply claims that defendants maliciously intended to "jeopardize[ ]" his job. Amended Complaint, ¶¶ 8c, 15, 16.

■ There is no deprivation of liberty if an employee is not fired. *Lawson v. Sheriff,* 725 F.2d at 1139. Plaintiff has thus not suffered any injury due to the alleged defamation other than stigma to his reputation, which is not sufficient to sustain a cause of action under § 1983. Summary judgment is accordingly granted for all defendants on those portions of plaintiff's amended complaint based on defamation.

**Illegal Arrest and Malicious Prosecution Claims**

Defendants have moved for a complete dismissal of plaintiff's complaint as to his allegedly illegal arrest and malicious prosecution because plaintiff invoked his Fifth Amendment right against self-incrimination during his deposition, and refused to state whether he committed the bicycle violations. In support of their argument, defendants refer to an Illinois appellate court case holding that plaintiffs in a civil action may not invoke the Fifth Amendment and still maintain their lawsuit. *Galante v. Steel City National Bank of Chicago,* 66 Ill.App.3d 476, 23 Ill.Dec. 421, 384 N.E.2d 57 (1st Dist.1978), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 53 (1979). The plaintiffs in *Galante* appeared at their depositions and refused to answer any questions except to give their names. *Id.,*

66 Ill.App.3d at 478–79, 23 Ill.Dec. at 423–24, 384 N.E.2d at 59–60. In those circumstances, the court ruled that the plaintiffs could not use their Fifth Amendment privilege as both a sword and a shield by prosecuting a civil suit but refusing to comply with legitimate discovery requests. Default judgment was entered for the defendants, and the case was dismissed.

There is no indication in this case that plaintiff generally refused to comply with discovery. The only time plaintiff refused to answer questions at his deposition was when defendants' attorney asked whether plaintiff had committed the traffic violations for which he was arrested. Defendants' Memorandum in Support of Their Motion for Summary Judgment, Transcript of Dep. of Duane Bootz, at 120.[3] Plaintiff was obviously not trying to completely frustrate the discovery process as were the plaintiffs in *Galante.* Instead, he invoked the Fifth Amendment solely in order to avoid giving testimony which could have incriminated him in the state court proceedings concerning his traffic violations.

■ Dismissal of a civil suit where a plaintiff abuses both the discovery process and the use of the Fifth Amendment, as in *Galante,* is justifiable because the plaintiff has not properly invoked the privilege against self-incrimination. Application of the remedy is more troublesome, however, where dismissal will operate to penalize a plaintiff for properly asserting protections guaranteed under the Constitution.

Our threshold inquiry must be to determine whether plaintiff was entitled to invoke the Fifth Amendment. The Self-Incrimination Clause states that no person "shall be compelled in any *criminal case* to be a witness against himself...." United

---

**3.** Plaintiff's deposition testimony went as follows:

Q Were you riding a bicycle on June 30, 1983?

A June, yes, I did.

Q Were you riding a bicycle after darkness without lights?

MR. BOOTZ: I would advise the deponent to decline to answer on the grounds of self incrimination under the Fifth Amendment.

BY MR. WIMMER:

Q Were you riding a bicycle on or about June 30, 1983, in disobeyence of a stop sign?

MR. BOOTZ: I would advise the deponent in like manner.

Defendants' Memorandum in Support of Their Motion for Summary Judgment, Transcript of Dep. of Duane A. Bootz, at 120.

States Const. amend. V (emphasis added). The privilege, therefore, only applies to statements that would give rise to criminal sanctions, not civil liability. *See United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980); *Patrick v. United States*, 524 F.2d 1109, 1118–19 (7th Cir.1975) (collection of gambling tax liability is merely a method of enforcing a civil obligation and does not give rise to Fifth Amendment privilege against self-incrimination). Traffic violations under Illinois law are "quasi-criminal" offenses that are "not violations of the general criminal laws, but are, rather, a hybrid class of regulatory and penal offenses encompassing violations of state statutes, municipal ordinances and regulations relating to the operation and use of motor vehicle, etc." Committee Comments, Supreme Court Rule 501, Rules on Trial Court Proceedings in Traffic and Conservation Offenses, Municipal Ordinance Offenses and Certain Misdemeanors, Ill.Rev.Stat. ch. 110A, § 501 at 8 (Smith-Hurd 1976). Riding a bicycle without a headlamp and failing to stop at a stop sign are petty offenses, punishable by a fine. *See* Ill.Rev.Stat. ch. 95½, §§ 11–202, 11–1204(b), 11–1507.[4]

Under the long-standing ruling of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Self-Incrimination Clause applies in quasi-criminal cases:

As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution, and of that portion of the fifth amendment which declares that no person shall be compelled

in any criminal case to be a witness against himself. . . .

*Id.*, at 634, 6 S.Ct. at 534. Following *Boyd*, the Illinois courts have held the privilege against self-incrimination applies to municipal ordinance violations where a fine may be imposed. *See Hoban v. Rochford*, 73 Ill.App.3d 671, 677, 29 Ill.Dec. 531, 535, 392 N.E.2d 88, 92 (1st Dist.1979); *City of Chicago v. Lord*, 3 Ill.App.2d 410, 122 N.E.2d 439 (1st Dist.1954), *aff'd*, 7 Ill.2d 379, 130 N.E.2d 504 (1955) (violation of a municipal ordinance punishable by a fine is a "criminal" case, allowing police officers to arrest offenders without warrants and subject to the protections against unreasonable search and seizure and self-incrimination).[5] The Supreme Court has recently warned against interpreting *Boyd* too broadly, and declined to apply the privilege in a case imposing civil penalties for violations of the Federal Water Pollution Control Act. *United States v. Ward*, *supra*, 448 U.S. at 253, 100 S.Ct. at 2643. The Court found that the federal penalty was not criminal enough in nature to trigger the protections of the Fifth Amendment because the proceeds from the penalty were used to repair the damage due to water pollution, and was therefore more analogous to a civil damage award than a criminal fine; it was the only punishment authorized under the Act, unlike the statute in *Boyd* which included fines and imprisonment; and most importantly, there was overwhelming evidence that Congress intended to create only a civil penalty, with little evidence of a countervailing punitive purpose. *Id.*, at 254, 100 S.Ct. at 2644.

■ In the case of a traffic violation in Illinois, there is no remedial purpose to the fine imposed and it is simply intended as a

---

**4.** Three or more convictions in one year for the same traffic offense is a Class C misdemeanor, punishable by up to 30 days in jail or a fine. Ill.Rev.Stat. ch. 95½, § 11–202. Plaintiff alleges in his memorandum that he is being prosecuted under this habitual traffic offender statute, but he has alleged no facts to support this claim.

**5.** A number of other states have held that the Fifth Amendment does *not* apply in cases of traffic or municipal ordinance violations. *See*

*Owens v. State*, 178 Ind.App. 406, 382 N.E.2d 1312 (1978); *People v. Ferency*, 133 Mich.App. 526, 351 N.W.2d 225 (1984); *People v. Amitrano*, 59 Misc.2d 471, 299 N.Y.S.2d 275 (1969). These holdings, however, appear to be based on state law explicitly classifying traffic offenses as civil proceedings. *See Amitrano* (reluctantly finds that Fifth Amendment is inapplicable solely because of New York Court of Appeals ruling that traffic violations are civil cases).

punishment; imprisonment in addition to fines may be imposed on habitual traffic offenders; and there is no evidence that the Illinois courts and legislature intended to characterize traffic violations as only civil proceedings. Further, the police are authorized to arrest and detain traffic violators, and may require the posting of bail as a condition of release. *See* Ill.Rev.Stat. ch. 110A, § 526; *City of Chicago v. Lord, supra,* 3 Ill.App.2d at 419, 122 N.E.2d at 443. In light of these considerations, and given that the Illinois courts have already held that the Fifth Amendment privilege against self-incrimination is applicable in municipal ordinance violations, we are inclined to hold that the Fifth Amendment is similarly applicable to traffic violations, and that plaintiff legitimately invoked his right in this case.[6]

■ Where the Fifth Amendment applies, the Supreme Court has admonished that sanctions that would make use of the privilege "costly" may not be imposed, because that would effectively destroy the right to remain silent. *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Three circuits have held that automatic dismissal of a civil complaint when a plaintiff invokes the Fifth Amendment is just such an impermissible sanction. *See Attorney General of U.S. v. Irish People, Inc.,* 684 F.2d 928, 953 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *Campbell v. Gerrans,* 592 F.2d 1054–58 (9th Cir.1979); *Wehling v. CBS,* 608 F.2d 1084, 1087 (5th Cir.1979). These courts have held that where a plaintiff properly invokes the Fifth Amendment, the case may not be dismissed unless the defendant can show a substantial need for the specific information requested and there are no other less burdensome means

of preventing unfairness to the defendant. *Irish People, Inc.,* 684 F.2d at 953; *Wehling,* 608 F.2d at 1088; *see also Black Panther Party v. Smith,* 661 F.2d 1243, 1271 (D.C.Cir.1981), *judgment vac.,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982); *Parker v. Baltimore & Ohio Railroad Co.,* 555 F.Supp. 1177, 1180 (D.C.D.C. 1983). These decisions explain that dismissal for failure to comply with discovery, pursuant to Fed.R.Civ.P. 37, is inappropriate because Fifth Amendment testimony is privileged and Rule 26 explicitly excludes privileged matters from discovery. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged...."); *Irish People, Inc.,* 684 F.2d at 953; *Wehling,* 608 F.2d at 1086–87; *Campbell,* 592 F.2d at 1057–58. Nor is it accurate to characterize a plaintiff's decision to file suit a "voluntary" waiver of Fifth Amendment rights, since plaintiffs are often "compelled" to initiate civil actions to protect their rights. *Black Panther Party,* 661 F.2d at 1271; Comment, Plaintiff as Deponent: Invoking the Fifth Amendment, 48 U.Chi.L.Rev. 158, 162–64 (1981). The Fifth Circuit noted that "a civil plaintiff has no absolute right to both his silence and his law suit. Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege." *Wehling,* 608 F.2d at 1088. The balancing test, weighing the plaintiff's Fifth Amendment right against the defendant's substantial need for critical information, accommodates both of those interests.

The Seventh Circuit Court of Appeals has not yet directly addressed the question of whether and when a plaintiff may use the Fifth Amendment privilege without risking dismissal of his or her civil suit. The court has held that final judgment may not be entered against a defendant solely

---

6. The fact that the right was invoked during a deposition in a civil proceeding is immaterial, as it is settled that the Fifth Amendment may be used in civil cases as well as criminal cases, and in discovery proceedings as well as at trial. *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924, 926 (7th Cir.1983). Neither is this

a case where we must evaluate the actual possibility of future criminal prosecution, as the traffic violation prosecution is proceeding concurrently with this case. *See In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 871–72 (7th Cir.1979).

because he invokes the privilege in answering a plaintiff's complaint. *National Acceptance v. Bathalter, supra,* 705 F.2d at 931–32. An adverse inference may be drawn at trial from the defendant's refusal to answer, but judgment may not be based on that silence alone, without requiring the plaintiff to present a *prima facie* case. *Id.*

▪ Following this rationale, we believe that dismissal of plaintiff's case here, where he has properly invoked his Fifth Amendment privilege, is too great a cost. Defendants have not shown that they have a substantial need for the privileged information, which amounts to a request that plaintiff admit that he committed the alleged traffic violations. According to *National Acceptance,* if plaintiff persists in refusing to testify, defendants may be able to use that silence against him, which could be particularly damaging since plaintiff bears the burden of showing that his arrest and prosecution were without probable cause. *See* discussion *infra.* Defendants should also be able to assemble information as to the existence of probable cause from the testimony of defendant Childs, the arresting officer, and other defendants involved in plaintiff's arrest and prosecution. Because plaintiff's Fifth Amendment right against self-incrimination outweighs defendants' need for admissions of guilt as to the traffic violations involved, dismissal of plaintiff's case is not an appropriate response to his use of the Fifth Amendment at his deposition.

▪ As for the substantive elements of plaintiff's claims for false arrest and malicious prosecution, plaintiff must show that he was arrested without probable cause. The actual existence of probable cause is an absolute bar to a § 1983 action regardless of whether the arresting officer acted maliciously or in bad faith. *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980). A

state court finding of probable cause, either at a preliminary hearing or at trial, collaterally estops plaintiff from relitigating the issue in a civil rights suit. *Guenther v. Holmgren,* 738 F.2d 879, 884–85 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985); *see also Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). If probable cause does not exist, then plaintiff must show that under clearly established legal standards in effect at the time of the arrest, his arrest was unlawful. *Moore v. The Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1344 n. 10 (7th Cir.1985).[7]

▪ No evidence as to the existence or non-existence of probable cause has been presented, and therefore summary judgment must be denied. At the time this motion was taken under advisement, state court proceedings concerning plaintiff's traffic violations were still pending. If the question of probable cause was fully litigated and the state court concluded that there was probable cause to believe that plaintiff committed the violations for which he was arrested and prosecuted, then summary judgment for defendants on the claims of malicious prosecution and illegal arrest would be appropriate.[8] Since there is no evidence to that effect before us, defendants' motion for summary judgment on plaintiff's illegal arrest and malicious prosecution claims is denied.

**Selective Prosecution Claims**

Plaintiff complains that defendants selectively enforced the bicycle traffic ordinances by applying the ordinances only against plaintiff. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 7–8. Plaintiff argues that no one else was arrested for bicycle violations in 1983, and that his arrest, detention and prosecution for such

---

7. The Seventh Circuit in *Moore* adopted the objective standard for qualified immunity set out by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), for § 1983 actions against police officers.

8. Plaintiff has not alleged any additional facts which would give rise to a claim for the use of excessive force or the existence of harsh conditions during his detention. *See Turket v. Lund,* 623 F.2d at 31.

violations amounted to a purposeful and invidious denial of plaintiff's equal protection rights.

 As the Supreme Court has recently reiterated, "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States,* — U.S. —, —, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). A selective prosecution violates the Equal Protection Clause only when it is motivated by a discriminatory purpose and is shown to have a discriminatory effect. This discrimination must be based on an unjustifiable classification, such as race, religion or other arbitrary classification. *Id.; see also Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). While plaintiff contends that defendants arrested him due to a desire to harass or injure plaintiff personally, he has not alleged that his arrest was due to any invidious class-based discrimination. Plaintiff is a white male. He has failed to state a claim based on selective prosecution, and those portions of his complaint are dismissed, with prejudice.

**Surveillance Claims**

Plaintiff also claims that defendants' "super-strict" surveillance of his home and car the night of June 30, 1983, violated his constitutional rights. The only surveillance incidents plaintiff refers to are defendant Childs' "stake-out" of plaintiff's home between 10:00 p.m. and midnight that night, and defendant Rozkuszka's "tail" on plaintiff's car after plaintiff left the Des-Plaines police station. Amended Complaint, ¶¶ 9, 10.

 Police surveillance tactics are constitutional so long as they do not intrude on a person's reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968); *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Therefore, surveillance of an individual's

home from a public area and the following of an automobile on public streets and highways are permitted. *United States v. Knotts,* 460 U.S. 276, 280–82, 103 S.Ct. 1081, 1084–85, 75 L.Ed.2d 55 (1983) ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.") Plaintiff has not alleged that defendants illegally entered his home or otherwise intruded on his privacy. Therefore, plaintiff has suffered no infringement of his Fourth Amendment rights.[9]

 Otherwise lawful surveillance may give rise to a civil rights action, but only if the surveillance affected plaintiff's conduct in exercising his constitutional rights, thereby causing an injury. *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *Alliance to End Repression v. City of Chicago,* 742 F.2d 1007, 1009–10 (7th Cir.1984); *Ghandi v. Police Department of City of Detroit,* 747 F.2d 338, 347 (6th Cir.1984); *Kraus v. Village of Barrington Hills,* 571 F.Supp. 538, 542–43 (N.D.Ill.1982) (Grady, J.). Plaintiff must show that his rights, such as his First Amendment rights to speech or association, were limited or "chilled" by a specific present objective harm due to the surveillance or threat of a specific future harm. *Laird,* 408 U.S. at 14, 92 S.Ct. at 2326.

Plaintiff makes no mention of any change in his conduct which resulted from defendants' actions, nor do we see how the limited surveillance on that one evening could have unconstitutionally chilled plaintiff's rights. There are no allegations that the surveillance went beyond the activities of June 30 or were otherwise excessive or abusive. Plaintiff's surveillance claims are therefore dismissed, with prejudice.

**Conspiracy Claims**

 Although plaintiff does not specifically invoke 42 U.S.C. § 1985(3),[10] he does

---

**9.** Plaintiff does not complain that defendant Childs or any other police officer entered his property except to arrest him for the bicycle violations. The legitimacy of that entry is determined by whether there was probable cause to arrest plaintiff.

**10.** Section 1985(3) reads:

allege that defendants' conduct "was in furtherance of a plan of the defendants, and in conspiracy with the Chief of Police of the City of DesPlaines, and with the police department of the City of Des-Plaines, and of the City of DesPlaines," to harass, embarrass and discredit plaintiff, and get him fired from his job. Amended Complaint, ¶ 15. In order to state a claim under § 1985(3), a conspiracy must have been motivated by racial or other class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 100–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984). Moreover, the class distinction must be one that is as invidious as those that have been historically suspect, such as race, national origin, sex or religion. *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1485–86 (7th Cir.1985) (class-based discrimination against the handicapped is not actionable under § 1985(3)).

Plaintiff alleges that defendants' actions were due to their malicious intent against him personally, but he has not set forth any facts which indicate a *class-based* as opposed to individually-based animus that would give rise to a cause of action under § 1985(3). Accordingly, plaintiff's conspiracy claims are dismissed with prejudice.

### Claims Against Defendants Alfano and the City of DesPlaines

The only causes of action remaining are plaintiff's allegations of malicious prosecution and illegal arrest. We will address the supervisory liability of defendants Alfano and the City of DesPlaines for these claims.

It is well established that supervisory personnel and municipalities cannot be held responsible under § 1983 for the actions of subordinate employees solely on a theory of *respondeat superior*. Liability may only be imposed where there are official policies, customs or practices which violate constitutional rights, or the supervisor was personally involved in the alleged unconstitutional actions. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Bell v. City of Milwaukee, supra*, 746 F.2d at 1269; *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir.1980). In addition, the Seventh Circuit has recently held that "[a] complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand when the policy identified is nothing more than acquiescence in prior misconduct," and now requires that plaintiffs plead some facts which indicate the existence of an unconstitutional policy or practice. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. April 17, 1985).

Other than the conspiracy allegations, *see* discussion *supra* at 103–04 plaintiff alleges only that defendants Alfano and the City of DesPlaines "engaged in a course of conduct which violates the civil and constitutional rights of the Plaintiff" (Amended Complaint, ¶ 6); acquiesced in the "super-strict" surveillance of plaintiff's home (¶ 9); and instructed police officers to follow plaintiff (¶ 10). There are no other facts in the complaint as to the individual actions of defendant Alfano, nor are there allegations that a city policy or practice caused plaintiff's injuries. Furthermore, plaintiff has not come forward with any

---

If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such State ... the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

evidence following discovery to further implicate Alfano and the city, while Alfano has submitted his affidavit denying any knowledge of or involvement in the incidents alleged in plaintiff's complaint. Defendants' Motion for Summary Judgment on Plaintiff's First Amended Complaint, Affid. of Leroy Alfano. Summary judgment is therefore granted in favor of defendants Alfano and the City of DesPlaines on plaintiff's remaining claims and they are dismissed from this case.

## CONCLUSION

Summary judgment is granted in favor of all defendants on plaintiff's defamation claims. Plaintiff's selective prosecution, surveillance, and conspiracy claims are dismissed with prejudice for failure to state a cause of action. Summary judgment is granted in favor of defendants Alfano and the City of DesPlaines on plaintiff's remaining claims for illegal arrest and malicious prosecution, and they are dismissed from this case entirely. Defendants' motion for attorneys' fees pursuant to 42 U.S.C. § 1988 is taken under advisement until the close of this case.

This case will now be considered ready for trial on plaintiff's claims for illegal arrest and malicious prosecution.