983 F.2d 1059
 24 Fed.R.Serv.3d 1136
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ann WILDAUER, Plaintiff-Appellant,
v.
FREDERICK COUNTY; Leslie Cruger; Joseph E. Emerson;
Stephen Mood; John S. Mathias, Robert C. Snyder,
Defendants-Appellees,
and UNKNOWN DEPUTIES OF THE FREDERICK COUNTY SHERIFF'S
DEPARTMENT, Defendants.
 No. 92-1349.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 28, 1992
Decided: January 12, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Senior District Judge. (CA-90-2114-H)
 ARGUED: Matt P. Lavine, College Park, Maryland, for Appellant.
 Diane Krejsa, Assistant Attorney General, Baltimore, Maryland, for Appellees.
 ON BRIEF: J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland; Regina Ann Casey, Brault, Graham, Scott & Brault, Rockville, Maryland, for Appellees.
 D.Md.
 Affirmed.
 Before SPROUSE and CHAPMAN, Senior Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 * Plaintiff-Appellant Ann Wildauer (Wildauer) was a foster mother responsible for fifteen children, most of whom were disabled, at the time this controversy arose. Two sets of parents, who had placed their children in Appellant's care, complained to the Frederick County Department of Social Services (FDSS) that Wildauer refused to release their children to them. The parents allege that Wildauer claimed she had adopted the children, although she did not have legal custody over any of the four children. Wildauer explained her reluctance by alleging abuse of the children by their parents during visits.
 
 
 2
 After some investigation and consultation with Joseph Emerson (Emerson), Deputy County Attorney for Frederick County, Leslie Cruger (Cruger), a social worker for FDSS, went to Wildauer's home on May 12, 1988 to obtain the release of the four children. Cruger was accompanied by Emerson, J.M. Trail (Trail) and Fred Anderson (Anderson) of the Frederick County Sheriff's Department, and several family members and friends of the children. Wildauer willingly released the two youngest children to their parents while the group stood at her door. However, she claimed the two older children had disappeared and invited Cruger to help her search the house for the missing children. The missing children were eventually discovered in a neighbor's home.
 
 
 3
 As a result of her observation that Wildauer's home was unhygienic and potentially unsuitable for disabled and sick children, Cruger opened a neglect investigation for the eleven children remaining in Wildauer's care, one of whom was Wildauer's natural son and one of whom had been adopted. The other nine children were living in her home without any formal arrangement. Cruger initiated the neglect investigation pursuant to Md. Fam. Law Code Ann. § 5-706. On May 16 and May 20, 1988, Cruger visited Wildauer's home with nurses from the Department of Health to examine the children and investigate their medical histories, medications, and schooling. Although Wildauer did not object to these visits at the time, she now claims she was threatened into cooperating.
 
 
 4
 The investigation concluded that each of the eleven children had suffered neglect. On the advice of Emerson, FDSS prepared a petition for custody of the children by way of a Child in Need of Assistance (CINA) petition. See Cts. & Jud. Proc. Code Ann. 3-818(a). Before FDSS filed the petition however, it learned that Wildauer had moved to Wicomico County, Maryland. WDSS filed a CINA petition, but the Wicomico County Court allowed Wildauer to retain the children.
 
 
 5
 Wildauer filed this action on August 7, 1990, broadly alleging violations of her rights under 42 U.S.C. § 1983. Appellant protests: (1) the unreasonable entry and search of her home in violation of the Fourth Amendment; (2) medical examinations of children in her home in violation of the Fourth and Fourteenth Amendments; (3) removal of children from her care in violation of the Fourteenth Amendment and the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 620 et seq. and 670 et seq.; (4) neglect investigation in violation of the Fourteenth Amendment; and (5) defamation. The Complaint names Frederick County, Cruger, Emerson, Stephen Mood, Director of FDSS, John Mathias, Frederick County Attorney, Robert Snyder, Frederick County Sheriff, and "Unknown Deputies of the Frederick County Sheriff's Department," now known to be Trail and Anderson.
 
 
 6
 On January 22, 1991, the district court entered a scheduling order requiring all amendments to the complaint and/or substitutions of parties to be completed within 120 days. On July 17, 1991, Wildauer moved to amend her complaint to substitute Lawrence Speelman for John Mathias (County Attorneys) and to identify J.M. Trail and Fred Anderson as the previously identified but unnamed sheriffs. On September 24, 1991, following a status conference, the district court denied Appellant's Motion for Leave to Amend.
 
 
 7
 Appellant then moved for partial Summary Judgment and Appellees moved for Summary Judgment. After oral argument, the district court denied appellant's motion and entered Summary Judgment for appellees. On appeal, Summary Judgment decisions are reviewed de novo.
 
 II
 
 8
 * The district court denied plaintiff's Motion for Leave to Amend. The amended complaint would have reflected greater factual detail, the name of the proper County Attorney, and the names of the deputies present at the May 12 visit to Wildauer's home. Appellant argues that the district court improperly denied the motion because (1) Appellees did not oppose the motion; (2) the motion deadline was no longer in effect; and (3) the district court failed to exercise its discretion.
 
 
 9
 Fed.R.Civ.P. 15(a) allows a party to amend a pleading only by leave of the court or by the written consent of the adverse party. Although appellees did not oppose plaintiff's motion, they did not give the written consent required by the rule.
 
 
 10
 Furthermore, the motion was filed on July 17, 1991, after the 120 day deadline imposed in the court's scheduling order of January 22, 1991. Appellant argues that the motion deadline was no longer in effect because discovery deadlines were extended several times and the amendments requested were based on information obtained through discovery. However, appellant had access to the necessary information as early as April 29, 1991, when she received appellees' answers to interrogatories. Since motions to amend are committed to the discretion of the trial court, Keller v. Prince George's County, 923 F.2d 30 (4th Cir. 1991), citing Foman v. Davis, 371 U.S. 178, 182 (1962), the district court did not abuse its discretion in denying a motion filed after the deadline.
 
 B
 
 11
 The appellant characterizes the May 12th visit to her home as an unconstitutional search in violation of the Fourth Amendment. In determining whether a search and seizure is reasonable, we must balance the government's need to search with the invasion endured by the plaintiff. New Jersey v. T.L.O., 469 U.S. 325, 337 (1985). Furthermore, investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context. Wyman v. James, 400 U.S. 309, 318 (1971) (New York law making receipt of welfare benefits contingent on social worker's visit to home does "not fall within the Fourth Amendment's proscription ... because it does not descend to the level of unreasonableness ... which is the Fourth Amendment's standard.").
 
 
 12
 The Fourth Amendment protects against unreasonable searches and seizures. United States v. Place, 462 U.S. 696 (1983). Since Wildauer did not have custody of the four children, she voluntarily returned two of them to their parents. After alleging that the remaining two children were missing, she invited Cruger to help her look for them. The entry of the deputy sheriffs and Emerson into her home was not unreasonable under the circumstances.
 
 
 13
 Wildauer's consent to Cruger's entry is uncontested, but it is not clear that she objected to the entry of the sheriffs. Although entry by the sheriffs for a criminal search might require disclosure that the search could be refused (see Florida v. Bostick, U.S., 111 S.Ct. 2382, 2387 (1991) ("[T]he appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.")), the non-criminal nature of this visit makes such disclosure unnecessary, and at least one court has held that once a person consents to a search, even in a criminal setting, he may not qualify the number of officials allowed to search.
 
 
 14
 United States v. Rubio, 727 F.2d 786, 797 (9th Cir. 1983). Having consented to Cruger's entry, Wildauer could not deny access to the other members of the party.
 
 
 15
 The individual defendants are also protected by qualified immunity for their entry into Wildauer's home, since they did"not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Weller v. Dep't of Social Services for the City of Baltimore, 901 F.2d 387, 398 (4th Cir. 1990) (Qualified immunity applies to individual defendants who removed child from parents' custody.); Gooden v. Howard County, 954 F.2d 960 (4th Cir. 1992) (Police officers who seized allegedly distraught woman from her home and took her to psychiatric hospital were protected by qualified immunity.). The defendants correctly understood that the parents had a right to retrieve their children. Furthermore, Wildauer's grudging willingness to return the children and invitation to Cruger to help search justified the group's reasonable belief that their assistance was also required.
 
 C
 
 16
 Wildauer also contends that the removal of the four children from her home deprived her of privacy interests protected by the due process clause of the Fourteenth Amendment. However, any such liberty interest would be "substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents." Smith v. Organization of Foster Families, 431 U.S. 816, 847 (1977). Several courts have explicitly held that foster parents do not have a constitutionally protected liberty interest in a continued relationship with their foster child. See, e.g., McComb v. Wambaugh, 934 F.2d 474, 483 (3d Cir. 1991); Renfro v. Cuyahoga County Dept. of Human Services, 884 F.2d 943, 944 (6th Cir. 1989); Blacklund v. Barnhart, 778 F.2d 1386, 1390 (9th Cir. 1985); Drummond v. Fulton Cty. Dep't of Family & Children's Services, 563 F.2d 1200, 1206 (5th Cir. 1977) (en banc ). Since Wildauer did not have custody of the four children, she did not have a constitutionally protected liberty interest.
 
 
 17
 Wildauer claims that she was entitled to a hearing in connection with the removal of the children pursuant to the Adoption Assistance and Child Welfare Act (AACWA or Act), 42 U.S.C.ss 620 et seq. and 670 et seq. However, Appellant was not even a licensed foster parent for the four children and was thus not entitled to the benefits of the Act. 42 U.S.C. § 672(c). Moreover, there is no private right of action under the AACWA. Suter v. Artist M., U.S., 112 S.Ct. 1360, 1365 (1992).
 
 D
 
 18
 Wildauer argues that Cruger's visits to her home accompanied by nurses on May 16 and May 20 violated her Fourth Amendment right to be free from unreasonable searches. Because the state's interest in examining the neglected children outweighed any attenuated privacy interest of Wildauer, see, e.g., Darryl H. v. Coler, 801 F.2d 893, 902 (7th Cir. 1986) ("[W]e cannot say that the Constitution requires that a visual inspection of the body of a child who may have been the victim of child abuse can only be undertaken when the standards of probable cause or a warrant are met."), the district court properly decided that the medical examinations of the children did not violate plaintiff's rights.
 
 E
 
 19
 Wildauer alleges that Cruger's neglect investigation was unreasonable and was commenced to harass her. The district court found the investigation to be reasonable, and there is nothing in the record to suggest otherwise. After observing the unsanitary conditions of Wildauer's home and the needs of the children there, Cruger commenced an investigation and requested medical records from the childrens' doctors. Individuals who investigate child abuse or neglect enjoy at least qualified immunity. See Vosburg v. Dep't of Social Services, 884 F.2d 133, 138 (4th Cir. 1989); Md. Cts. & Jud. Proc. Code Ann. § 5-362.
 
 F
 
 20
 Wildauer asserts that FDSS violated her privacy and damaged her reputation by sending false information to WDSS. However, § 1983 cannot be used as a vehicle for asserting a claim of defamation. See Siegert v. Gilley, U.S., 111 S.Ct. 1789, 1794 (1991); Paul v. Davis, 424 U.S. 693, 712 (1976). The publication of information regarding child abuse or neglect to entities authorized by law to receive such reports does not state a claim unders 1983. See Whelehan v. County of Monroe, 558 F. Supp. 1093, 1109 (W.D.N.Y. 1983). Even if Wildauer had stated a claim, the individual Defendants would be protected by absolute immunity. Md. Ann. Code FL § 5708.
 
 
 21
 Without liability on the part of Cruger, Emerson, Trail, and Anderson, there can be no liability of their supervisors.
 
 AFFIRMED