David BILLING, Plaintiff,

v.

CITY OF NORFOLK, VIRGINIA, and
Joy W. Slight, Defendants.

Civ. A. No. 2:93cv573.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 7, 1994.

Anthony S. Mulford, Chesapeake, VA, for
plaintiff David Billing.

Harold P. Juren, Jacob P. Stroman, IV,
Office of the City Atty., Norfolk, VA, for
defendant City of Norfolk, VA.

S. Bernard Goodwyn, Willcox & Savage,
P.C., Norfolk, VA, for defendant Joy W.
Slight.

### FINAL ORDER

REBECCA BEACH SMITH, District
Judge.

This case was brought by plaintiff under
42 U.S.C. § 1983, alleging that defendants
violated his constitutional rights. Specifically,
plaintiff alleges that defendants denied
him his liberty interest in his private employment
without due process of law when they
found reason to suspect plaintiff guilty of
child abuse.

On October 19, 1993, pursuant to 28 U.S.C.
§ 636(b)(1)(B) and Federal Rule of Civil Procedure
72(b), this case was referred to a
United States Magistrate Judge to conduct a
hearing and to submit to a judge of the court
proposed recommendations for disposition of
defendant City of Norfolk's Motion to Dismiss,
Or In The Alternative For Summary
Judgment, and of defendant Slight's Motion
to Dismiss. Report of the Magistrate Judge
was filed on March 9, 1994, recommending
summary judgment in favor of the City of
Norfolk[1] and dismissal of all claims against
defendant Slight. By copy of the report,
each party was advised of the right to file
written objections to the findings and recommendations
made by the Magistrate Judge.
On March 29, 1994, plaintiff submitted his

---

1. Because the Magistrate Judge relied, in part,
on an affidavit submitted by the City of Norfolk, its motion was construed as a motion for summary
judgment rather than a motion to dismiss.

objections to the report; the City of Norfolk responded on April 4, 1994.[2]

■ The court, having examined the objections filed by plaintiff to the Magistrate Judge's Report and Recommendation and having made *de novo* findings with respect to the portions objected to, does hereby adopt and approve the findings and recommendations set forth in the Report and Recommendation of the United States Magistrate Judge filed March 9, 1994, in their entirety. Accordingly, the City of Norfolk's motion for summary judgment and Slight's motion to dismiss are GRANTED. The Clerk shall enter judgment in favor of defendants.

Plaintiff is advised that he may appeal from the judgment entered pursuant to this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

The Clerk is DIRECTED to send a copy of this Final Order to all counsel of record.

It is so ORDERED.

### REPORT & RECOMMENDATION

PRINCE, United States Magistrate Judge.

#### Order of Designation

Senior United States District Judge J. Calvitt Clarke, Jr., by an Order entered October 19, 1993, designated the undersigned Magistrate Judge to conduct a hearing and to submit to a judge of the Court proposed recommendations for disposition by the judge of the Motion To Dismiss, Or In The Alternative, For Summary Judgment In Favor Of City Of Norfolk filed on September 15, 1993, and the Motion To Dismiss Amended Complaint Filed On Behalf Of Defendant

Joy W. Slight, which was also filed on September 15, 1993.

A hearing was held on January 5, 1994, at which Anthony S. Mulford, Esquire, appeared on behalf of plaintiff; Harold P. Juren, Esquire, and Jacob P. Stroman, IV, Esquire, appeared on behalf of defendant City of Norfolk; and S. Bernard Goodwyn, Esquire, appeared on behalf of defendant Joy W. Slight.

#### Nature of the Case

This is an action against a municipality and one of its employees under 42 U.S.C. § 1983, alleging violation of plaintiff's due process rights under the Fourteenth Amendment of the Constitution of the United States.

#### Proceedings

The municipal defendant has filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the amended complaint fails to state a claim upon which relief can be granted against it. In the alternative, the municipality has moved for summary judgment under Fed.R.Civ.P. 56, and has filed affidavits and supporting documentation.

The individual defendant has filed a motion to dismiss the amended complaint under Rule 12(b)(6), for failure to state a claim upon which relief may be granted against her.[1]

#### Alleged Facts

The amended complaint alleges that the Norfolk Department of Human Services ("the Department") is a department of the defendant City of Norfolk, Virginia ("City").[2] (Amended Complaint ¶ 4.) Defendant Joy Slight ("Slight") is an employee of the Department serving as a social worker in the Department's Child Protective Services sec-

---

**2.** Defendant Slight did not respond.

**1.** Similar motions had been filed by defendants with regard to the original complaint. On August 24, 1993, at the time of the oral arguments on the motions, plaintiff moved to amend his complaint, and the motion was granted with leave to amend on or before September 3, 1993. Defendants were ordered to respond by September 15, 1993. These and subsequent filings were

made timely, and reargument was set on November 17, 1993, but was continued because plaintiff's attorney was ill. It was heard on January 5, 1994.

**2.** The Department of Human Services had been a named defendant in the original and amended complaints, but it was dropped as a party.

tion. (¶ 5.) Plaintiff David Billing ("Billing") was employed as a residential counselor at Barry Robinson Center ("BRC"), a residential psychiatric facility for youth in Norfolk. (¶ 6.) The Department is responsible for providing protective services to children by investigating charges of child abuse, for making findings based upon its investigations, and for reporting these findings to the Virginia Department of Social Services. (¶ 9.)

On or about May 15, 1991, the Department received a report alleging that Billing had made inappropriate verbal and physical advances of a sexual nature on several occasions toward a female resident ("Victim") of BRC. (¶ 10.) On the same day, BRC suspended Billing with pay, pending outcome of the investigation. (¶ 11.) On May 21,[3] Slight and others began the investigation by interviewing Victim and two other female residents of BRC whom Victim identified. (¶ 12.) Billing received no written notice that the investigation had begun (¶ 13), but on May 28 Billing was interviewed by Slight and three others. (¶ 14.)

It is further alleged that on or about June 5, the Department "published the false and erroneous allegations of child abuse" to BRC, and BRC forced Billing to resign. (¶ 15.) On June 7, Billing received a letter from Slight, dated June 6, notifying him that the investigation resulted in a finding of "reason to suspect" child abuse "with moderate risk." (¶ 16.)

There followed two appeals of the Department's findings.[4] The first appeal was at a local conference at the Department's offices on July 30. (¶ 17.) Karen Lindsay[5] reviewed evidence offered by Billing and Slight at the local conference, and she reinterviewed Victim. Lindsay upheld the finding and the basis for it on August 13. Lindsay was the Department's "authorized final policy maker," and her ratification of Slight's finding "represented [City's] policy." (¶ 18.) The second appeal was to the Virginia Department of Social Services, and a hearing was conducted on February 26, 1992, in Virginia Beach. (¶ 19.) The hearing officer upheld the finding after reviewing evidence presented by Billing and the Department. (¶ 20.) Billing had a right under Va.Code §§ 63.1–248.6:1B[6] and 9–6.14:16, to appeal the hearing officer's decision to an appropriate Virginia State Circuit Court, but he did not exercise that right.[7]

Finally, it is alleged that Billing had a liberty interest protected by the United States Constitution in pursuing his job as a counselor and in future employment (¶ 7), and this entitled him to be free from unlawful intrusions or interferences by City and Slight. (¶ 8.) Slight knew that a false and erroneous finding of reason to suspect child abuse could have devastating consequences on the career of one so charged (¶ 21); and she had a duty to use reasonable care and to thoroughly investigate all relevant facts (¶ 22); but she acted with gross negligence and reckless disregard and deprived Billing

---

3. All dates are in 1991, except where stated otherwise.

4. The appellate procedures were established in writing and were based upon Virginia statutory authority.

5. In an affidavit filed in support of City's motion for summary judgment, Karen Lindsay says that she is a Division Of Social Services Program Manager employed by City.

6. At the time of the events complained of, the statute provided:

"A. A person who is the subject of a report pursuant to this chapter [Chapter 12.1. Child Abuse and Neglect] and who is suspected of ... the abuse ... complained of may, within thirty days of being so notified, request the local department rendering such report to amend such report and the local department's related records. The local department shall hold an informal conference or consultation in order for such person to informally present factual data, arguments or submissions of proof to such local department. If the local department refuses the request for amendment ..., the person may, within thirty days thereafter, petition the Commissioner, who shall grant a hearing to determine whether it appears, by a preponderance of the evidence, that such report or record, in whole or in part, contains information which is irrelevant or inaccurate regarding the commission of abuse ... by the person who is the subject of the report or record and therefore shall be amended."

7. Billing's decision to forego further appeal is asserted in City's Reply Brief, at 7 (Docket Entry # 9), and Billing did not challenge the statement.

of substantive and procedural due process. (¶ 23.) City and Slight acted under color of state law (¶ 28), and Billing suffered damages as a result. (¶¶ 24–27.)

## Discussion

In pursuit of his claim, Billing alleges that he had a liberty interest in his employment at BRC and in future employment (¶ 7), that he had a right to be free from unlawful intrusions and interferences by City and Slight (¶ 8), and that Slight was grossly negligent and recklessly disregarded his liberty interest (¶ 23) when the false and erroneous report was filed with BRC following the investigation, which prompted BRC to demand his resignation. (¶ 15.)

The injuries allegedly resulting from this conduct are lost income from being deprived of his right to pursue his occupation (¶ 24), injury to his reputation (¶ 25), and emotional pain and mental anguish (¶ 26).

In order to properly understand and analyze Billing's claim, it is important to consider the arguments advanced at page 6 of his Brief in Response to Defendants' Motion[s] to Dismiss (Docket Entry # 8) and by his attorney during oral arguments. Mr. Mulford argued, as the brief had, that the core of the wrong was the action by Slight in advising BRC of the allegations against Billing and of her investigation and findings without first giving Billing the right to a hearing at which he could offer evidence to contradict Victim's allegations and Slight's findings. This "pre-deprivation hearing" was required by due process, it was argued, in spite of the opportunity given to Billing to offer his defense during the investigation and in his subsequent appeals.[8] Mr. Mulford stated that Billing's complaints about Slight's investigation are restricted to her acceptance of the allegations as true, her findings, and her failure to afford the extra hearing. In other words, no legal complaint is made against the way Slight conducted the investigation. The defamation that Billing complains of is the defamation contained in Victim's allegations and included in the report filed by the Department with BRC. Billing does not contend that Slight independently added defamatory statements. The wrong, according to Mr. Mulford's argument, was the action alleged in ¶ 15 of the amended complaint, that is, that on or about June 5, 1991, the Department published the false allegations to BRC, without another hearing, which prompted BRC to force Billing to resign.[9]

Defendants support their Rule 12(b)(6) motions with the argument that Billing was not deprived of any rights or privileges secured to him by the Constitution of the United States. Billing was employed by BRC, which is not an agency of City,[10] and he thus was not employed by City. Therefore, Billing's claim does not fall into that recognized category of claims by a government employee having a property interest in his employment who claims termination without due process of law.

Billing first relies upon *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Board of Regents*, an untenured college professor brought a § 1983 action against a state university which had failed to renew his one-year contract. The university, in conformity with the Rules of the Board of Regents, stated no reason for its decision. Roth contended that he was denied procedural due process by the university's failure to give him a reason for his nonretention and an opportunity for a hearing. The Supreme Court held that he had no constitutional right to demand either procedure.

The Fourteenth Amendment to the Constitution of the United States provides that no state "shall ... deprive any person of life, liberty, or property, without due process of

---

8. Additional evidence was considered in the first appeal. (Amended Complaint, ¶ 18.)

9. There has been no transcript filed of the hearing on defendants' motions, but this statement of Billing's position by his attorney was carefully noted at the time by the Court. Either party, of course, may file the transcript if desired.

10. Counsel for neither party could state the origin of BRC's existence or the source of its funding, but counsel for the City stated that it was not run by or for City.

law." In *Board of Regents* the Supreme Court held that the liberty guaranteed by the Fourteenth Amendment includes the right "to engage in any of the common occupations of life ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free [persons]." *Board of Regents*, 408 U.S. at 572, 92 S.Ct. at 2706, quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1976). To establish his claim under 42 U.S.C. § 1983, Billing must show that City and Slight deprived him of a liberty interest secured by the Constitution of the United States and that the deprivation was achieved under color of state law. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

*Paul v. Davis* is a most instructive case. There, Davis claimed that he was defamed when Paul, a chief of police, distributed fliers to merchants containing Davis's picture and identifying him as an active shoplifter. Davis faced a shoplifting charge at the time the flyer was published, but shortly after the flyer was distributed the charge was dismissed by the court. Although Davis's employer questioned him about the charge in the flyer, he only warned Davis against again being in a similar situation. The Supreme Court noted its prior decisions holding that the Fourteenth Amendment has limited effect, and said that Davis had "pointed to no specific constitutional guarantee safeguarding the [liberty] interest he assert[ed had] been invaded." *Id.* at 700, 96 S.Ct. at 1160. The Court said that prior cases had noted the frequently drastic effect of defamation by the government, but said that those cases did not hold that the due process clause provides protection against the effects of defamation "apart from some more tangible interests such as employment." *Id.* at 701, 96 S.Ct. at 1160. Later, the Court made clear that the type of employment it had in mind was government employment.[11] Referring to *Board of Regents v. Roth, supra,* the Court said:

> [I]ts language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected

with any refusal to rehire would be actionable under the Fourteenth Amendment:

> 'The state in *declining to rehire [Roth],* did not make any charge against him that might seriously damage his standing and associations in his community....

> 'Similarly, there is no suggestion that the State, *in declining to re-employ [Roth],* imposed on him a stigma that foreclosed his freedom to take advantage of other employment opportunities.' *Id.,* 408 U.S. at 573, 92 S.Ct. at 2707....

Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment.

*Id.* 424 U.S. at 709–710, 96 S.Ct. at 1164–1165.

The Court also noted its earlier cases recognizing "a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of ... 'liberty' ... as meant in the Due Process Clause." *Id.* at 710, 96 S.Ct. at 1164. These interests were those recognized and protected by state law which required procedural safeguards before the state could remove or significantly alter them. Measuring Davis' claim against those "difficult to define but comprehended liberty interests," the Court said:

> Kentucky law does not extend to [Davis] any legal guarantee of present enjoyment of reputation which has been altered as a result of [the police chief's] actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law.... And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' ... recognized by state or federal law, nor has it worked any

---

11. "[T]he Court has never held that the mere defamation of an individual ... was sufficient to invoke the guarantees of procedural due process

absent an accompanying loss of government employment." *Id.* at 706, 96 S.Ct. at 1163.

change of [Davis'] status as theretofore recognized under the State's laws.

*Id.* at 711–12, 96 S.Ct. at 1165–66.

Finally, worth noting is the Supreme Court's commentary in *Paul* concerning its earlier decision in the case of *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), dealing with proceedings of the Commission on Civil Rights established by Congress in 1957. The Court said:

> There the Court described the functions of the Commission in this language:
>
> "It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any *legal sanctions*. It does not make determinations depriving anyone of his life, liberty or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's *legal rights*. The only purpose of its existence is to find facts which may subsequently be used as a basis for legislative or executive action." *Id.* at 441, 80 S.Ct. at 1514....
>
> Addressing itself to the question of whether the Commission's "proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions," the Court said that "even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." *Id.,* at 443, 80 S.Ct. at 1515.

*Id.* 424 U.S. at 706, n. 4, 96 S.Ct. at 1163, n. 4.

Billing also relies upon *Limerick v. Greenwald*, 666 F.2d 733 (1st Cir.1981), to support his claim. In that case, the plaintiffs alleged that following the takeover of a bank by a state banking regulatory agency, the defendant state banking officials made false statements that publicly stigmatized the plaintiffs, who had been officers of the bank, in violation of the Massachusetts Information Prac-

tices Act and "settled constitutional law decisions." It was alleged that the statements ridiculed, embarrassed, and dishonored plaintiffs · in violation of their liberty rights and actually denied them the opportunity to continue their careers in banking. Some of the false statements had been made through information given "to the public media." The circuit court reversed the trial court's dismissal for failure to state a federal claim and held that if plaintiffs could prove their allegations "[s]uch a showing would demonstrate deprivation of a constitutionally protected liberty interest." *Id.* at 735. In making this statement, the court cited *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city council deprived chief of police of liberty without due process of law when it released to the public a false statement impugning his honesty, causing his discharge the next day, and refusing to give him an opportunity to clear his name); *Board of Regents v. Roth, supra; Beitzell v. Jeffrey*, 643 F.2d 870 (1st Cir.1981) (untenured college professor was not denied liberty interest during tenure proceedings at which false and stigmatizing charges were made against him, and following which state university denied him tenure); and *Rodriguez de Quinonez v. Perez*, 596 F.2d 486 (1st Cir.1979) (bank directors removed from office by official of Puerto Rico on grounds of personal dishonesty without an opportunity to be heard were denied due process protection of their liberty interests in a status created for bank directors by the laws of Puerto Rico).

*Limerick v. Greenwald, supra,* appears to support Billing's argument that in order to invoke a due process protection for a liberty interest in employment (not given a recognized status by state law), it is not necessary that ·the employment be by government. *Limerick,* however, relies entirely upon cases that either involve government employment or state-created status. *Limerick* also cites *Paul v. Davis, supra,* in its supporting cases, but only after the signal "Cf," which *The Bluebook, A Uniform System of Citations* (15th Ed.1991), at page 23, says "Cited authority *supports a proposition different from the main proposition but sufficiently analo-*

*gous to lend support."* The Court has found only one citation of *Limerick* beyond the First Circuit. The First Circuit itself has cited it but three times since 1981,[12] but not in support of the issue raised in this case. Within the First Circuit, however, the District of Maine has held that *Limerick* has set First Circuit precedent. *Scott v. Central Maine Power Co.,* 709 F.Supp. 1176, 1193 (D.Me.1989); *Small v. Inhabitants of the City of Belfast,* 547 F.Supp. 761, 762–63 (D.Me.1982). The only other case cited by Billing in support of due process protections for a private employment interest is *Bootz v. Childs,* 627 F.Supp. 94 (N.D.Ill.1985). The pertinent discussion of this issue in *Bootz,* however, is relegated to a footnote, where the court noted the general proposition that such a right exists in certain circumstances. 627 F.Supp. at 99, citing *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (plaintiff lost his security clearance as an employee of a government contractor) and *Phillips v. Bureau of Prisons,* 591 F.2d 966 (D.C.Cir.1979) (paralegal to organization providing legal services to prisoners was refused admission to prisons, although other paralegals were allowed admission).

Having noted the precedential weight of *Limerick,* however, following *Limerick* would still afford Billing no relief. The conclusion of the court in *Limerick* was as follows: "If such a deprivation were established, due process would require a post-deprivation proceeding at which the plaintiffs could clear their names.... To be meaningful, the name clearing proceeding must be run by the same actor who diminished the plaintiffs' reputation." 666 F.2d at 735. Billing alleges in ¶ 15 of his amended complaint that the Department published the false and erroneous allegations to BRC. In ¶¶ 16 and 17, he alleges that he appealed the findings to the Department and they were upheld after the evidence had been reviewed. Thus, Billing received all the process that would be due under the reasoning of the *Limerick* decision.

Although Billing leans heavily on *Limerick* in support of his argument, he also argues that when the Department filed its report with BRC it "blacklisted [him] from seeking employment in his chosen profession without the requisite notice and opportunity to be heard." (Docket Entry # 8, at 6.) He also argues, as previously noted, that he was entitled to a pre-deprivation hearing, not a post-deprivation hearing, because a post-deprivation hearing for him was inadequate in that his "sole remedy [under Va.Code § 63.1–248.6:1] would have been reinstatement with his previous employer." (Docket Entry # 8, at 6–7.) Billing relies upon *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836 (7th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985), for his blacklisting argument. It lends him no support. In *Cameo,* a nursing home was placed on a suspension of referrals list, which the court called a blacklist, the legal effect of which was to preclude state agencies from referring nursing home patients to it. Wisconsin law provided that no nursing home could be placed on the list unless it had been afforded the opportunity for a hearing prior to the listing. Although the nursing home requested a hearing, its request was not granted. Instead, the home was placed on the list and lost referrals, violating its right to due process and providing the basis for a § 1983 action. *Cameo Convalescent Center* is a classic example of the deprivation of a liberty interest in a status provided by a state, as recognized by *Paul v. Davis,* and discussed above.

Billing's argument that his "post-deprivation hearing" remedy, under Va.Code § 63.1–248.6:1, was "woefully inadequate" because it would only afford him reinstatement to his employment [13] misinterprets the statute. There is nothing in that statute, or in Va. Code § 9–6.14:15 *et seq.,* which allows further appeals to state courts, which would give the Department, the Commissioner of the State Department of Social Services, or the State Courts of Virginia the authority to order Billing's reinstatement as an employee of

---

**12.** *Bennett v. Boston,* 869 F.2d 19, 22 (1st Cir. 1989); *Borucki v. Ryan,* 827 F.2d 836, 843 (1st Cir.1987); *Dea v. Look,* 810 F.2d 12, 17 (1st Cir.1987).

**13.** And, by inference, not to money damages.

BRC. *Paul v. Davis* establishes that Billing has been deprived of no Fourteenth Amendment guarantee. While Billing had a liberty interest in pursuing his avocation as a counselor at BRC, he was not deprived of that right by defendants. To begin with, Billing was forced to resign by BRC, not by defendants, who had no right or authority to force BRC to demand his resignation, much less to order his reinstatement. Furthermore, even if the Department's filing of Slight's report had the collateral consequence of moving BRC to demand Billing's resignation, that would not be because of any affirmative action taken by City or Slight. *Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). It is not suggested, nor could it be, that Billing is guaranteed employment with BRC, or with any other private employer, or the right to a good reputation, by the Commonwealth of Virginia or the City of Norfolk, such that the report filed by the Department worked any change of his status as recognized under state laws. Billing had no procedural due process right to an additional hearing before the report was filed. Whatever rights he had were fully protected by the process followed by Slight, which included providing him an opportunity to present evidence during the investigation, granting him the right to the two levels of appeal that he pursued, and granting him the right to further appeal in the state courts.

Accordingly, the defendants' motions to dismiss should be GRANTED on the ground that they have deprived Billing of no right guaranteed by the Constitution of the United States.

City also moved to dismiss on the ground that even if Slight's actions deprived Billing of a constitutional right, City would not be liable unless that deprivation implemented or executed a policy statement officially adopted by the city's officers. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The only allegation in this regard is in ¶ 18 of the amended complaint, which states:

On August 13, 1991, after reviewing the evidence offered by Mr. Billing and Joy Slight, and after reinterviewing [Victim], Karen Lindsay, the authorized final policy maker for the Norfolk Department of Human Services, upheld the finding of reason to suspect child abuse and the basis for it. By thus ratifying Joy Slight's decision and the basis for it, Karen Lindsay's actions represented the City of Norfolk's policy.

This allegation is insufficient to support a claim that City had adopted a policy to deprive Billing or other suspects in child abuse investigations of their constitutional right to due process. First and foremost, the complaint of Billing, as made clear by his attorney during oral arguments, is that Slight deprived him of his right to due process when she failed to afford him a second hearing before the Department filed its report with BRC. Mr. Mulford stated that nothing in the complaint is intended to allege that Slight deprived Billing of any right in any other aspect of her investigation. The hearing conducted by Lindsay following Billing's appeal, however, was on the merits of the allegations and findings, not on the issue of whether Billing was entitled to an extra hearing before the report was filed by the Department. Therefore, Lindsay's role, even if she was the final policy maker for the Department as alleged, was not to ratify Slight's alleged denial of Billing's due process right to an extra hearing; it was to give consideration to the merits of Slight's findings. Billing does not allege that City had a policy of depriving suspects of prefiling reviews, even assuming such reviews were constitutionally guaranteed.[14] Finally, the allegation that Lindsay, allegedly the authorized final policy maker for the Department,[15] alleged to be only a department of City,[16] "[b]y thus ratifying Joy Slight's decision ... represented the City of Norfolk's policy" is a *non sequitur.* Even affording the allegations the most liberal of interpretations, they claim no more than that Lindsay ratified Slight's violation of Billing's rights, and that because she

---

14. As previously noted, *Limerick v. Greenwald,* 666 F.2d 733, which Billing relies upon, indicates that he would be entitled to a post-deprivation review only.

15. ¶ 18, Amended Complaint.

16. ¶ 4, Amended Complaint.

was the final policy maker for a city department, her action represents city policy.[17] That is not the law. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court said:

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's 'official policy' is contained in [our discussion, in *Monell v. New York City of Social Services*, of the legislative history of § 1983.] The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.... Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered.

*Id.* at 479, 481, 106 S.Ct. at 1298, 1299. Billing attempts to squeeze the facts in this case into the *Pembaur* glove by asserting that when one of Slight's supervisors co-signed the letter to Billing advising him of the findings, and when Lindsay upheld the findings on appeal, those actions " 'adopted and promulgated' as official city policy" Slight's report. That reasoning would eviscerate *Pembaur*.

Because Billing must establish that his Fourteenth Amendment right to due process of law was violated under color of state law before he would be entitled to a remedy under § 1983, it adds nothing to his complaint (¶ 23) to allege that Slight acted with gross negligence and reckless disregard of that right if the right did not first exist. On the other hand, if the gravamen of Billing's complaint is on its bottom a claim that he was defamed when the report containing the allegations was filed with BRC, then Virginia tort law provides him a remedy.

The motion to dismiss City, which will be treated as a motion for summary judgment pursuant to Rule 56 because of the consideration of the unrefuted evidence contained in the Lindsay affidavit, should be GRANTED on the further ground that there was no official policy of City to deprive Billing of his alleged liberty interest.

Slight has also moved to dismiss on the ground that she has absolute immunity. In *Wildauer v. Frederick County*, 993 F.2d 369 (4th Cir.1993), plaintiff asserted that the Frederick County Department of Social Services violated her privacy and damaged her reputation when a social worker investigated and reported on the welfare of children under her foster care. The Fourth Circuit affirmed the district court's order of summary judgment dismissing plaintiff's complaint, and said:

> The publication of information regarding child abuse or neglect to entities authorized by law to receive such reports does not state a claim under § 1983. *See Whelehan v. County of Monroe*, 558 F.Supp. 1093, 1109 (W.D.N.Y.1983.)

*Id.* at 373. The court added to this statement as follows: "Even if Wildauer had stated a claim, the individual Defendants would be protected by absolute immunity." *Id.* at 373, citing Md.Fam.Law Code § 5–708. The immunity referred to, however, is a product of Maryland law. A similar Virginia Statute is not as sweeping, and would not apply in this case.[18] In any event, under *Wildauer*,

---

17. In fact, Lindsay was not the final policy maker for the City. Her "work is subject to review and correction by [her] superiors, including the Assistant Director of the Division of Social Services, the Director of Social Services, and the Director of the Department of Human Services." (Affidavit of Karen Lindsay, ¶ 9, Docket Entry # 18.) Furthermore, the Virginia Department of Social Services Manual outlines the authority of and procedures to be followed by local departments. (Lindsay affidavit, ¶ 5.) One of the procedures is that the investigating social worker, Slight in this case, must discuss the case with the facility administrator, BRC's administrator in this case, and file a final report with the facility and state the findings of the investigation. (Lindsay affidavit, ¶ 6.)

18. Va.Code § 63.1–248.5 provides: "Any person making a report pursuant to § 63.1–248.3 [physicians, nurses, teachers, etc., to report certain injuries to children], a complaint pursuant to § 63.1–248.4 [complaints by others of certain injuries to children], or who participates in a judicial proceeding resulting therefrom shall be immune from any civil or criminal liability in connection therewith, unless it is proven that such person acted in bad faith or with malicious intent."

Billing has not stated a claim under § 1983 against Slight, and for this additional reason her motion to dismiss should be GRANTED.

### RECOMMENDATION

For the reasons aforesaid, it is RECOMMENDED that defendants' motions to dismiss and City's alternative motion for summary judgment be GRANTED.

### DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The Clerk shall mail copies of this Report and Recommendation to counsel of record. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendation within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendation set forth above will result in waiver of right to appeal from a judgement of this court based on such recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841, 846 (4th Cir.1985) (quoting *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985)); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).