Affirmed by published opinion. Judge WIDENER wrote the majority opinion, in which Judge NIEMEYER joined. Judge TRAXLER wrote a dissenting opinion.
OPINION
WIDENER, Circuit Judge:
Plaintiff Gayle Martin appeals the district court’s grant of summary judgment to the defendants, St. Mary’s County Department of Social Services, Mexis Zoss, and Kathleen Coulby. Miss Martin sued the defendants pursuant to 42 U.S.C. § 1983 after her children were removed from her home for one night in October 1997. Miss Martin does not appeal the district court’s judgment in favor of defendant St. Mary’s County Department of Social Services (St. Mary’s Department) under the Eleventh Amendment. She appeals, however, the district court’s grant of qualified immunity to defendants Aexis Zoss and Kathleen Coulby. For the following reasons, we affirm the district court’s judgment.
I.
We review the facts in this appeal in the light most favorable to the non-movant. Mensh, v. Dyer, 956 F.2d 36, 39 (4th Cir.1991). Miss Martin is the mother of two minor children, Justin, born on April 16, 1989, and Jaime, born September 16, 1995. St. Mary’s Department is a Maryland state agency charged with investigating allegations of child abuse and neglect and authorized by the state to take temporary custody of a child if it believes that the child is in serious, immediate danger. See Md.Code Ann., Family Law § 5-709(c) (1999).
Prior to the events at issue in this appeal, St. Mary’s Department was involved with Miss Martin’s family, specifically through investigations regarding Justin and Miss Martin’s other child, Jessica. In January 1997, St. Mary’s Department received a referral stating that Miss Martin had neglected Justin by allowing Justin to stay home from school for half of the school year. This referral prompted the *504 events at issue in this appeal.[1] At that time, Justin was part of the Chronic Health Impaired Program, a school sponsored program for children with illnesses in which teachers travel to the ül student’s home to provide instruction. A teacher had not visited since November 1996 due to Miss Martin’s refusal. Based on the referral, Mrs. Coulby, a Child Protective Services Investigator for St. Mary’s Department, and her supervisor, Miss Zoss, investigated the allegation. In May 1997, they filed a petition in the circuit court seeking a finding that Justin was a “Child in Need of Assistance” (CINA)[2] and that Justin and Jaime required shelter care.
The circuit court held a Shelter Care Hearing on May 14, 1997. Thereafter, the circuit court ordered that: 1) legal care and custody of Justin be with St. Mary’s Department, but that both Justin and Jaime would remain in Miss Martin’s physical custody; 2) Miss Martin must make a good faith effort to ensure Justin’s school attendance; 3) the parties must submit to a family psychological evaluation; and 4) Miss Martin must attend counseling. The first hearing served as an arraignment and the circuit court set a later date for the adjudicatory hearing of the CINA petition. In an adjudicatory hearing the court determines whether the allegations in the petition, other than allegations that the child requires the court’s assistance, treatment, guidance or rehabilitation, are true. See Md.Code Ann., Courts and Judicial Proceedings § 3-801(b) (1998). The CINA hearing was ultimately set for October 16, 1997.[3]
In July 1997, while the CINA petition was pending, Miss Martin moved with her children to Los Angeles, California. Miss Martin alleged that she told Mrs. Coulby, her family, and the post office that she was moving. After arriving in Los Angeles, Miss Martin and her children moved into a community center, and Justin began to attend school near their residence. At approximately the same time, Mrs. Coulby left St. Mary’s Department on maternity leave and did not return until October 8, 1997.[4]
On October 9, 1997 at approximately 10:45 p.m. (Pacific Time), members of both the Los Angeles Department of Child Services (Los Angeles Department) and the Los Angeles Police Department (Los An-geles Police) arrived at Miss Martin’s residence to remove the children to take them to Maryland for the CINA hearing. Miss Martin alleged in her complaint that Mrs. Coulby and Miss Zoss told the Los Ange-les Department that emergent circumstances existed and that the circuit court had granted an order for Miss Martin’s children to be returned to Maryland in the custody of St. Mary’s Department. Miss Martin refused to surrender custody, and the Los Angeles Department forcibly removed her children and held them overnight in a Los Angeles Department facility. The record does not indicate that St. Mary’s Department requested or peti *505 tioned for the circuit court’s assistance in obtaining physical custody of Justin and Jaime Martin at any time.
On October 10, 1997, the circuit court in Maryland granted an emergency order directing St. Mary’s Department to call the Los Angeles Department and to return the Martin children to the home of Miss Martin. St. Mary’s Department was also present at the emergency hearing and agreed with Miss Martin’s attorney to release the children to their mother, with the previous orders of the court to remain in effect. The Los Angeles Department returned the Martin children to Miss Martin at 11:00 p.m. (Pacific Time) on October 10, 1997.
Subsequently, on September 28, 1998, Miss Martin filed this 42 U.S.C. § 1983 action against St. Mary’s Department, Miss Zoss, and Mrs. Coulby (the defendants) in the United States District Court for the District of Maryland. In her complaint, Miss Martin also alleged several state law claims. The defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. The district court granted the defendants’ motion for summary judgment on July 12, 1999.[5] Miss Martin appeals from that judgment.
We review the district court’s grant of summary judgment de novo. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994). The moving party is entitled to summary judgment only if no genuine issue of material fact exists. Fed. R. Civ. Pro. 56(c).
II.
Miss Martin argues that the district court erred by granting the defendants qualified immunity for three reasons: 1) her rights to familial integrity and due process of the law were sufficiently clear to enable the defendants to know that the children should not have been removed from Miss Martin’s custody without a court order;[6] 2) a genuine dispute existed about whether the defendants knowingly made false representations to the Los An-geles Department or whether the defendants had an objectively reasonable belief that the children were in immediate danger; and 3) the defendants failed to initiate a post-deprivation hearing for Miss Martin, rather Miss Martin’s counsel initiated it. We turn first to the issue of qualified immunity.
A.
Qualified immunity shields public officials from personal liability for performance of their official duties, provided that they do not violate “clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A court considers whether the rights allegedly violated by the public official were clearly established at the time of the challenged conduct, Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and whether such conduct was objectively reasonable. Harlow, 457 U.S. at 818, 102 S.Ct. 2727. “As such, if there is a legitimate question’ as to whether an official’s conduct constitutes a constitutional violation, the official is entitled to qualified immunity.” Wiley v. Doory, 14 F.3d 993, 995 (4th Cir.1994) (citing Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir.1987)), cert. denied sub nom. Wiley v. *506 Mayor of Baltimore, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995). We have held that social workers may assert qualified immunity in appropriate circumstances. See Hodge v. Jones, 31 F.3d 157, 162 (4th Cir.) (citing Wildauer v. Frederick County, 993 F.2d 369, 373 (4th Cir.1993)), cert. denied, 513 U.S. 1018, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994).
Miss Martin alleges that the defendants violated her rights to familial integrity and due process of law by making misrepresentations to the Los Angeles Department causing the removal of her children for one night. First, we note that although the family unit is a “fundamental precept firmly ensconced in the Constitution and shielded by Due Process,” it is “neither absolute nor unqualified.” Hodge, 31 F.3d at 163. A state has a legitimate interest in protecting children from neglect and abuse and in investigating situations that may give rise to such neglect and abuse. See Renn v. Garrison, 100 F.3d 344, 349-350 (4th Cir.1996). Because of the complicated balance between parents’ rights to raise their children and a State’s interest in protecting its minor citizens, the right to familial integrity is “amorphous” in many cases. See Hodge, 31 F.3d at 164. The contours of the right to familial integrity may not be “sufficiently clear” in certain situations, to be deemed “clearly established” as required. See Renn, 100 F.3d at 349 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A public official must decipher what conduct violates protected rights, but an official will not be held liable for “bad guesses in gray areas.” Maciariello v. City of Lancaster, 973 F.2d 295, 298 (4th Cir.1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).
In this case, the circuit court in Maryland took away Miss Martin’s legal custody of Justin after the initial CINA proceeding; however, that court permitted her to keep physical custody of both children and legal custody of Jaime. In its order granting legal custody of Justin to the St. Mary’s Department, the circuit court made clear that it expected St. Mary’s Department and Miss Martin to work together to improve the Martin family situation through concerted efforts to transport Justin to school and Miss Martin to counseling. During the hearing, the circuit court thanked St. Mary’s Department for its involvement in the Martin family affairs and expressed its belief that the situation had the potential to improve. The circuit court then set the adjudicatory hearing for October 1997. Miss Martin’s subsequent move to California did not cause St. Mary’s Department to lose its interest in or its legal custody of Justin at any time.
B.
Even assuming that the right to familial integrity was clearly established at the time of the defendants’ alleged conduct, the facts and the record do not show that the defendants committed any intentional wrong-doing, “much less intruded so vigorously into the [Martin] family as to infringe their family privacy right.” Renn, 100 F.3d at 349. This is especially true given the St. Mary’s Department’s legal custody of Justin and the status of the pending CINA petition. In fact, at the time of the events in Los Angeles, Miss Martin and her children were then required to be present at the CINA adjudicatory hearing only some five or six days later.
The record in this case is devoid of evidence that demonstrates the defendants’ alleged misrepresentations to the Los Angeles Department. Miss Martin alleged in her complaint that a Los Ange-les Department social worker told her that *507 he had a court order from Maryland to remove her children. Another affidavit, submitted by Patricia Jackson, the children’s court appointed attorney, stated that the defendants did not describe an emergency situation to her that would have warranted the removal of the Martin children. But, the record does not contain any affidavits from any Los Angeles Department workers or other evidence based on personal knowledge to establish the alleged misrepresentations. We agree with the district court’s assessment of any communications between St. Mary’s Department and the Los Angeles Department with respect to the Martin children. These communications constituted “matters of judgment and interpretation.” It held the conclusions or actions based on these communications “could have arisen from a misunderstanding in the communication.” We agree.
Because the record falls short on the facts and does not indicate that the defendants made misrepresentations to the Los Angeles Department, and because any actions on the part of the defendants causing the removal of the Martin children could have arisen from a misunderstanding, we are of opinion that the defendants’ conduct was no more than negligent conduct, if that. ‘Where a government official’s act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is constitutionally required.” Daniels v. Williams, 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (internal quotations omitted) (emphasis is the Court’s). Because a § 1983 claim cannot be sustained, it follows that the defendants are entitled to qualified immunity. See Clark v. Link, 855 F.2d 156, 166 (4th Cir.1988).
C.
We also reject Miss Martin’s claim that the defendants violated her due process rights because her counsel, rather than St. Mary’s Department, initiated the post-deprivation hearing. First, due process is a flexible concept. See Jordan by Jordan v. Jackson, 15 F.3d 333, 348 (4th Cir.1994). Secondly, Miss Martin received a post-deprivation hearing and the St. Mary’s Department directed the return of her children to her within 24 hours of their removal.
For the foregoing reasons, the district court’s judgment granting the defendants’ motion for summary judgment is accordingly

AFFIRMED.

. School records showed that Justin missed 66 days of kindergarten and 71 days of first grade. Miss Martin disputed these numbers during the investigation.

. The Maryland Code defines "Child in Need of Assistance” as one who requires the assistance of the court because he or she is mentally handicapped or not receiving ordinary and proper care and attention and the parents are unable or unwilling to give such care. Md.Code Ann., Courts and Judicial Proceedings § 3-801(f) (1998).

. The hearing was apparently held on October 15, 1997.

. In her affidavit, Mrs. Coulby asserted that upon her return from maternity leave, she worked in the Service Intake Division and did not work on the Martin case.

. The district court declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and dismissed Miss Martin's state law claims without prejudice.

. Miss Martin recognizes that if a social worker believes a child to be in immediate danger, the social worker may remove the child from the parents' custody as long as a post-deprivation hearing is provided.