**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1988

KATHY B. PATON, as Administratrix of the Estate of Kelsey R. Paton, deceased, and in her individual capacity,

Plaintiff – Appellant,

v.

CITY OF NORFOLK, VIRGINIA; LARRY BOONE, Individually and in his official capacity as Police Chief for the City of Norfolk, Virginia; MARAVIA REID, Individually and in her official capacity as Public Information Officer for the City of Norfolk, Virginia; JOHN DOE(S), Individually and in his/her official capacit(ies) as Police Officers for the City of Norfolk, Virginia,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Elizabeth W. Hanes, District Judge. (2:23-cv-00331-EWH-LRL)

Submitted: April 23, 2025                                    Decided: June 25, 2025

Before KING, AGEE, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge King and Judge Agee joined.

**ON BRIEF:** Matthew J. Weinberg, INMAN & STRICKLER, P.L.C., Virginia, Beach, Virginia, for Appellant. Bonnie P. Lane, Christopher W. Palermo-Re, OFFICE OF THE CITY ATTORNEY, Norfolk, Virginia, for Appellees City of Norfolk, Virginia and Larry Boone. Brian N. Casey, CLARKE, DOLPH, HULL & BRUNICK, PLC, Virginia Beach,

Virginia, for Appellee Maravia Reid.

_____

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

Kathy Paton alleges that city police officers actively covered up the previous assaults of the man who raped and killed her daughter. According to Paton, this police misconduct encouraged the man's criminal acts toward her daughter. So, in a 42 U.S.C. § 1983 action against the City of Norfolk and certain police officials, she claimed the conduct violated her and her daughter's substantive due process rights. The district court dismissed Paton's complaint. As to claims brought on her daughter's behalf, it concluded the defendants did not create the danger of the criminal conduct. As to Paton's own claim, the court concluded that she had not identified a protected liberty interest. For the reasons described below, we affirm.

I.

In 2020 and 2021, Michael Ebong carried out a series of sexual assaults in the Norfolk, Virginia area.[1] In November 2020, Ebong took Sheena West home from the Seaside Raw Bar and killed her through a drug overdose. He then called his mother, Maravia Reid, who was a Public Information Officer at the Norfolk Police Department. Reid told Ebong what to tell the police about West's death to avoid suspicion. She then instructed the police officers responding to Ebong's call to "conceal, contaminate, and destroy evidence at the scene that could be used to prosecute her son," and not to review

---

[1] Because we are reviewing a motion to dismiss, we take the facts as alleged in Paton's complaint. In other words, "we accept as true all well-pled facts in the complaint and construe them in the light most favorable to [Paton]." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

his criminal history, which would have indicated a proclivity for sexual assault. J.A. 10. Norfolk Police Chief Larry Boone "condoned and authorized" Reid's instructions. J.A. 10.

The responding officers complied, and either "destroyed, contaminated [or] failed to preserve" eyewitness testimony, equipment Ebong used to drug West, the drugs Ebong forced on West, clothes and items belonging to West, and statements from Ebong. J.A. 11.

In May 2021, Ebong met Jane Doe, also at Seaside Raw Bar. He took her home and raped her. Unlike West, he did not manage to kill Doe. After waking up from a sedated stupor, Doe escaped.

Two months later, Ebong met Kelsey Paton at the same bar. Ebong then brought Kelsey home with him against her will. At his home, he hit Kelsey on the head and raped her before she died from an overdose. As he did with West, Ebong called in the overdose death and let Reid use her influence to cover up the crime. Once the officers arrived, they let Ebong carry Kelsey's body from his home to the emergency vehicle. The officers failed to preserve relevant evidence, including Kelsey's purse and the object Ebong used to hit her on the head. As a result, Ebong was convicted only of involuntary manslaughter rather than murder.

Paton sued the City of Norfolk, Chief Boone, Reid and John Doe Police Officers, alleging three counts on Kelsey's behalf and one count on her own behalf. Each count is a

§ 1983 claim alleging violation of substantive due process rights. All defendants moved to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim.[2]

The district court dismissed all four counts under Rule 12(b)(6). As to the claims asserted on Kelsey's behalf, it held that Paton had not plausibly alleged facts that, if true, showed "immediate interactions between the state actor and the plaintiff that evince a sufficient causal connection, or nexus, between the state action and the alleged harm." J.A. 193. As to Paton's claim that the defendants violated her substantive due process rights, the court held that she had not identified a specific liberty interest that the defendants infringed. Thus, it dismissed this claim, too.[3] This appeal followed.[4]

II.

Paton argues on appeal that the district court erred in dismissing her § 1983 substantive due process claims. Section 1983 of Title 42 of the United States Code forbids the "deprivation of any rights, privileges, or immunities secured by the Constitution." And the Fourteenth Amendment Due Process Clause protects individuals from states that would

---

[2] The defendants also moved to dismiss under Rule 12(b)(1) for lack of standing. The district court denied that motion. This ruling was not appealed. We have an independent obligation to ensure that we have Article III jurisdiction. *Williamson v. Stirling*, 912 F.3d 154, 168 (4th Cir. 2018). We agree with the district court's standing determination.

[3] In its motion to dismiss, the city argued that Paton did not allege a *Monell* policy or custom. Since the district court concluded that Paton did not state a substantive due process violation, it did not reach the *Monell* argument.

[4] The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the case exclusively involves federal questions. Paton timely filed her Notice of Appeal. So, we have jurisdiction under 28 U.S.C. § 1291.

5

"deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause guarantees more than fair process . . . . The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997). So, a plaintiff can sue under § 1983 for substantive due process claims. *See, e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 837 (1998).

But not just any improper state conduct will support such a claim. First, a claim must involve "fundamental rights and liberty interests." *Glucksberg*, 521 U.S. at 720. Those liberty interests include specific freedoms identified in the Bill of Rights, plus freedoms that are "deeply rooted in this Nation's history and tradition," including the rights to marry, to have children, to use contraception and to bodily integrity. *Id*. at 721 (quoting *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 503 (1977)). Second, the challenged conduct must be "arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992)). Third, while the State itself may not arbitrarily infringe liberty interests, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

As to this third rule that the substantive due process clause generally does not require the State to protect citizens from private actors, the state-created danger doctrine is a narrow exception. Under it, the state can be held liable only when it "affirmatively acts to create or increase the risk that resulted in the victim's injury." *Graves v. Lioi*, 930 F.3d 307,

319 (4th Cir. 2019). "When the state itself creates the dangerous situation . . . it becomes much more akin to an actor itself directly causing harm to the injured party." *Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995) (en banc). So, a "plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015).

### A.

For the claims Paton brought on Kelsey's behalf, she alleged that the defendants undertook affirmative acts to help Ebong by covering up his murder of West. This cover-up, Paton argues, allowed Ebong to remain at large. But even if we assume, without deciding, that this is a sufficient affirmative act, Paton does not allege any interaction between the defendants and Kelsey. Immediate interaction between the state official and the plaintiff is a necessary requirement for state-created danger claims. *Pinder*, 54 F.3d at 1176 n.* (requiring a plaintiff to allege "immediate interactions between the officer and the plaintiff"). For example, in *Doe v. Rosa*, a camp counselor at the Citadel allegedly sexually abused campers. 795 F.3d at 432. The victims sued the Citadel's president under a state-created danger theory. We rejected that claim because the president "did not meet or speak with the Does, and by all accounts, was not even aware the Does existed." *Id*. at 441. Accordingly, we affirmed summary judgment for the president. *Id*. at 442.

Similarly, Paton does not allege any interaction between the police department and Kelsey, let alone "immediate interaction." Indeed, Paton does not allege that either the

7

defendants or Ebong had any idea who Kelsey was while the police officers investigated West. This dooms her state-created danger claim.

B.

Turning next to Paton's challenge to the district court's dismissal of her own substantive due process claim, recall that the Due Process Clause protects "against government interference with certain fundamental rights and liberty interests." *Glucksberg*, 521 U.S. at 720. Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

Paton argues that permitting Ebong to carry Kelsey's corpse to the emergency vehicle violated her protected liberty interest. On appeal, she identifies that liberty interest as the posthumous bodily integrity of her child. She attempts to cobble it together from two other liberty interests that we have recognized in the past. First, she cites *Martin v. Saint Mary's Department of Social Services*, 346 F.3d 502, 506 (4th Cir. 2003), which recognized "the right to familial integrity" based on "the complicated balance between parents' rights to raise their children and a State's interest in protecting its minor citizens." She then cites *Doe v. Rosa*—which held that "state actions that result in sexual abuse of children can be actionable under § 1983"—for the proposition that bodily integrity is a protected liberty interest. 795 F.3d at 437. Thus, Paton attempts to first use the concepts of familial and bodily integrity in ways we have not previously recognized and then combine them into a new liberty interest. While she recognizes that prior cases have not discussed this right, she

8

says the Virginia General Assembly has recognized the posthumous right of next of kin through legislation in Va. Code § 32.1-283(c).

There are at least three problems with this argument. First, Paton didn't make these liberty interest arguments to the district court. Paton limited her arguments below to stating that the department's conduct shocked the conscience. But she didn't say anything about what her liberty interest is or about posthumous bodily integrity. "Arguments raised in a trial court must be specific and in line with those raised on appeal." *In re Under Seal,* 749 F.3d 276, 287 (4th Cir. 2014). If they are not, the party fails to preserve the issue for appeal. *Id*. (citing *Kollsman, a Div. of Sequa Corp. v. Cohen,* 996 F.2d 702, 707 (4th Cir. 1993)). Because Paton did not preserve this argument for our review, it fails.

Second, even if we did consider this argument, Va. Code § 32.1-283(c) does not and cannot help Paton. It does not because that statute says nothing about posthumous bodily integrity of a parent's child. It simply permits the Chief Medical Examiner to release reports to parents of the decedent after releasing them to spouses or children. And it cannot because "while liberty interests entitled to procedural due process protection may be created by state law as well as the Constitution itself, those entitled to substantive due process protection (whatever the procedures afforded) are 'created only by the Constitution.'" *Hawkins v. Freeman*, 195 F.3d 732, 748 (4th Cir. 1999) (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985) (Powell, J., concurring)). A Virginia statute is not the Constitution.

Third, the history of substantive due process "counsels caution and restraint." *Moore*, 431 U.S. at 502 (Powell, J., plurality opinion); *see Shaw v. Stroud,* 13 F.3d 791, 805

9

(4th Cir. 1994) ("[B]ecause the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time."). That restraint counsels against Paton's attempt to combine two previously recognized interests into a new interest.

III.

For these reasons, the district court's decision is,

*AFFIRMED.*